Stevan DUROVIC, Plaintiff-Appellant,

v.

Robert N. PALMER, R. D. Sherman, R. W. Case, Hon. Anthony J. Celebrezze, Boisfeuilliet Jones, John H. Guill, Jr., Defendants-Appellees.

No. 14651.

United States Court of Appeals Seventh Circuit.

March 5, 1965.

John F. Sembower, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., Chicago, Ill., Thomas W. James, Asst. U. S. Atty., Chicago, Ill., William W. Goodrich, Asst. General Counsel, William R. Pendergast, Attorney, Department of Health, Education, and Welfare, Washington, D. C., for appellees.

Before CASTLE, Acting Chief Judge, DUFFY, SCHNACKENBERG, KNOCH, KILEY, and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

This is an appeal from a judgment dismissing an action against the Secretary of Health, Education and Welfare, his Special Assistant, the District Director of the Food and Drug Administration, and three of the latter's agents and inspectors. Plaintiff sought a mandatory injunction requiring defendants to discontinue their inspections and investigation of plaintiff's manufacture and sale of a drug known as "Krebiozen," a purported treatment for cancer, to surrender a photograph and negatives acquired during an inspection, to produce investigative reports, and to refrain from uttering misleading statements allegedly discrediting plaintiff and his drug.

Upon plaintiff's request for a preliminary injunction, defendants moved for summary judgment and a dismissal of the complaint. The motion for summary judgment was supported by affidavits. Plaintiff filed counteraffidavits. The district court made findings of fact and conclusions of law, then granted the motion for summary judgment and dismissed the action.

Defendants' supporting affidavits showed that the drug Krebiozen had been distributed in interstate commerce by plaintiff. They further showed that although the drug had not been approved under the provisions of section 505 of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 355, it had been and was being distributed ostensibly for investigational use under section 505(i) of the act and the regulations issued thereunder.

Plaintiff, as early as 1951, had represented to the Food and Drug Administration that Krebiozen was a white powder soluble both in water and mineral oil and distributed in ampule form. Supposedly all of the Krebiozen powder used between 1949 and 1959 had been brought by plaintiff into the United States from Argentina in the late 1940's. Plaintiff represented that this was enough to manufacture approximately 200,000 ampules. Yet investigation revealed that since 1950 plaintiff had purchased approximately 1,500,000 ampules and

enough mineral oil to fill them. This precipitated further investigation by the federal authorities.

According to the affidavits in support of the motion for summary judgment plaintiff claimed to have prepared Krebiozen powder from horse blood obtained at the Quaker Oats Company's dog food factory at Rockford, Illinois. Investigation showed that in 1959 and 1960 plaintiff had selected and injected approximately 400 horses with a preparation of actinomyces bovis antigen. Three hundred and fifty-eight horses where slaughtered and then bled. The blood was centrifuged to recover the plasma from which the Krebiozen powder was said to have been made.

On February 19, 1963, plaintiff was informed that the Food and Drug Administration would conduct a further investigation to determine whether Krebiozen was being distributed in accordance with federal law and to review the case histories of patients using the drug. Although plaintiff objected to the further investigation, he did submit records of his patients. The additional investigation was conducted at the dog food plant in Rockford and also at the Promak Laboratories in Chicago, owned by plaintiff and used by him for the preparation of his drug. Plaintiff refused a request to furnish records relating to samples of Krebiozen powder. Thereupon, he was notified that the inspectors wanted to observe the preparation of the next mixture of Krebiozen. They visited the Promak Laboratories on June 5, 1963, but plaintiff was out of town. On Saturday, June 8, 1963, the inspectors again visited his establishment. They found him preparing to label ampules freshly filled with mineral oil and Krebiozen powder. The door to the laboratory was open. Plaintiff's secretary was at work, and at least one sale of Krebiozen was made while the inspectors were present. The inspectors saw several containers with filled ampules. Plaintiff told them that these contained Krebiozen and mineral oil. To demonstrate the method of filling the ampules, plaintiff transferred the mineral oil from a drum to a glass container labeled distilled water. The inspectors took a photograph of the bottle. Later and after considerable difficulty, the inspectors obtained as samples for analysis one hundred ampules filled with Krebiozen powder and the mineral oil solution. They also requested a sample of the Krebiozen powder. Plaintiff told them that it was unavailable. Thereafter the inspectors contacted plaintiff several times to obtain a sample of the powder. Plaintiff promised to supply it but failed to keep his promise. Instead, he filed the instant action.

■ Plaintiff contends that the inspectors exceeded their statutory authority thereby violating his rights under the fourth amendment to the Constitution. He argues that the constitutional prohibition against unreasonable searches and seizures, applicable in determining the legality of inspections under the Federal Food, Drug, and Cosmetic Act, must be rigidly enforced; and further that the question of reasonableness cannot be answered by a fixed formula but must be resolved according to the facts of each case. Plaintiff cites Davis v. United States, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946), for the proposition that the time and place of an inspection are important in determining whether it is reasonable. He then relies on the fact that the inspection here was made on a Saturday at a time when he claims his establishment was not open for business. The facts submitted to the district judge showed, however, that the door to plaintiff's establishment was unlocked, his secretary was at work, the manufacturing process was under way, and a sales transaction took place while the inspectors were present.

Section 704 of the act, 21 U.S.C. § 374, specifically authorizes inspections to be conducted "at reasonable times and within reasonable limits and in a reasonable manner." Under the circumstances here present, we hold that the inspection,

although conducted on a Saturday, was a reasonable one and that defendants did not interfere with plaintiff's constitutional rights. We think the district judge was justified in concluding that the inspection about which plaintiff complains was conducted at a reasonable time, that reasonable requests were made upon him for data and samples, and that the inspectors "conducted themselves with a view to carrying out their statutory duties."

Plaintiff also contends that the district court erred in granting defendants' motion for summary judgment because there were disputed and genuine issues of material facts. He argues that the affidavits submitted by defendants could not be used to determine the facts in issue since contrary assertions were made in affidavits presented by plaintiff. The district court, however, in granting the summary judgment, noted that plaintiff's affidavits are "defective to the extent that [the] affidavits have been offered by persons having no personal knowledge of some of the matters attested." Fed.R.Civ.P. 56(e) provides that affidavits supporting or opposing a motion for summary judgment "shall be made on personal knowledge." In the absence of such legally sufficient affidavits showing the existence of a genuine issue of fact, summary judgment is authorized. Engelhard Indus., Inc. v. Research Instrumental Corp., 324 F.2d 347 (9th Cir. 1963); see also G. D. Searle & Co. v. Chas. Pfizer & Co., Inc., 231 F.2d 316 (7th Cir. 1956). Accordingly, we hold that the district judge properly invoked the rule permitting summary judgment.

Irrespective of the foregoing determinations, there were additional reasons for the dismissal of the action. It was not shown that the photograph taken by the inspectors had been published, nor was there a showing of what use, if any, the Food and Drug Administration intends to make of the photograph in the future. A similar situation was presented in American Dietaids Co., Inc. v. Celebrezze, et al., 317 F.2d 658 (2d Cir. 1963). There the question related to the return of tape recordings made during an investigation. We think the observations of the Second Circuit are peculiarly appropriate to the instant situation: "If a civil or criminal action should be brought and if claimed improper use of the tapes is then attempted, motion to discover or suppress the tapes may be appropriate. * * * The courts are reluctant to decide important constitutional questions at a stage of proceedings when the necessity of their resolution has not been established."

With respect to plaintiff's request for an injunction against further investigations and inspections, plaintiff was not entitled to such relief because, even assuming that the June, 1963 inspection was illegal, there was no showing in the district court of continued or future inspections of such character or the threat thereof. Finally, with respect to plaintiff's requests for other injunctive relief which we have heretofore listed, he has not argued these requests on appeal. He therefore must be held to have abandoned them.

The judgment of dismissal is affirmed.

HASTINGS, Chief Judge, did not participate in the consideration and disposition of this appeal.

SCHNACKENBERG, Circuit Judge (dissenting).

I believe that there should have been a trial rather than disposition by summary judgment.