**Joann Ford BOX, Plaintiff-Appellant,**

v.

**A & P TEA COMPANY, Defendant-Appellee.**

**Paula BROCKHOUSE, Plaintiff-Appellant,**

v.

**A & P TEA COMPANY, Amalgamated Meat Cutters and Butcher Workmen of North America, Local 320 and International Brotherhood of Amalgamated Meat Cutters and Butcher Workmen of North America, Defendants-Appellees.**

Nos. 84–1732, 84–1733.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 15, 1985.

Decided Sept. 5, 1985.

Rehearing and Rehearing En Banc Denied Nov. 18, 1985.

Swygert, Senior Circuit Judge, filed dissenting opinion.

Paul L. Strauss, Davis, Miner, Barnhill & Galland, P.C., Chicago, Ill., for plaintiffs-appellants.

John W. Powers, Asher, Pavalon, Gittler, Greenfield & Segall, Chicago, Ill., for defendants-appellees.

Before WOOD and POSNER, Circuit Judges, and SWYGERT, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiffs Joann Ford Box and Paula Brockhouse, two former A & P Tea Company ("A & P") cashiers, appeal from the summary judgments entered against their sex discrimination claims. Box contends that A & P discriminated against her in promotions and training while Brockhouse, who admits A & P disciplined her five times in the nine months prior to her discharge, argues that men were not disciplined for similar conduct. We affirm both summary judgments.[1]

## I.

Joann Ford Box worked for A & P as a retail clerk-cashier from July, 1965 to July, 1978. In the present lawsuit, Box alleges that A & P discriminated against her both because of her race and because of her sex. Box claims that A & P refused to promote her to bookkeeper or to give her training for that position because she is black. Box further claims that A & P did not promote her to assistant manager or to another management position because of her sex. In her affidavit submitted in opposition to the defendant's motion for summary judgment, Box stated

When I worked at A & P's store on East Court Street in Kankakee, for instance, I continually asked for bookkeeper training. Eventually my store manager told me that A & P's bookkeeping school had closed. I told him that, in that case, I wanted to receive training for some other position so I could advance, for instance, into the assistant manager position. He said that he didn't think that would be possible: it was the Company's policy to usually promote women only to the bookkeeper position, he told me.

A & P moved for summary judgment on Box's sex discrimination claim on the grounds that Box failed to raise a claim of sex discrimination in her complaint to the Equal Employment Opportunity Commission ("EEOC") and that all persons who received the bookkeeper jobs Box claimed she was denied were female. The district court granted summary judgment for both reasons.[2] First, the court agreed with A & P that "there [was] reason to doubt whether Box ever properly presented a specific charge of sex discrimination to the EEOC." The district court thought the second reason, that all vacancies in the bookkeeper position Box sought were filled by other women, was a more compelling reason for granting summary judgment. On appeal, Box argues that the first ground is erroneous because on a motion for summary judgment the district court must view the evidence in the light most favorable to the non-moving party. The second ground is wrong, the plaintiff claims, because the evidence submitted to the court demonstrated that Box was complaining not only of discrimination in bookkeeper promotions

---

**1.** At oral argument, this court questioned whether the summary judgment on Box's sex discrimination claim could be appealed under Rule 54(b) when her race discrimination claim remained pending in the district court. *See Parks v. Pavkovic*, 753 F.2d 1397, 1401 (7th Cir.1985) (district court does not have carte blanche to certify an order for immediate appeal under Rule 54(b)). Since oral argument the parties have settled the race discrimination claim and we therefore do not address the Rule 54(b) issue.

**2.** A & P argues that, in granting summary judgment, the district court relied only on the second ground and that therefore the question whether Box properly raised her sex discrimination claim to the EEOC is not at issue on appeal. Appellee's Brief at 15 n. 6. The clear language of the district court's order reveals that that court based its decision on both grounds and we therefore consider both as possible grounds for affirming the district court.

but also of discrimination in promotions to assistant manager positions.

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Both the district court and the appellate court must view the record and any reasonable inferences drawn therefrom in the light most favorable to the non-moving party. *See Munson v. Friske,* 754 F.2d 683, 690 (7th Cir.1985); *Hermes v. Hein,* 742 F.2d 350, 353 (7th Cir.1984).

■ A plaintiff can bring a Title VII action in federal court only for discrimination "like or reasonably related" to the conduct identified by the plaintiff in her EEOC complaint. *See Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.,* 538 F.2d 164, 167 (7th Cir.) (en banc), *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976). In *Jenkins,* we held that a plaintiff who checked the race but not the sex discrimination box on the EEOC form could nonetheless bring an action for sex discrimination because the factual allegations in her EEOC charge fairly raised claims of both sex and race discrimination. 538 F.2d at 169; *see Patterson v. General Motors Corp.,* 631 F.2d 476, 483 (7th Cir.1980), *cert. denied,* 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981).

■ In the present case, the typed factual charge discusses Box's claim of race discrimination and does not suggest a sex discrimination claim. *See Carrillo v. Illinois Bell Telephone Co.,* 538 F.Supp. 793, 798 (N.D.Ill.1982). Nonetheless, since we must view the evidence in the light most favorable to the non-moving party, we accept as true Box's affidavit statement that, after a friend had typed the complaint but before Box submitted it to the EEOC, Box checked the "sex" box on the EEOC form and wrote at the bottom "There had been assistant manager promotion[s] with less seniority than myself." Without these handwritten additions, Box's sex discrimi-

nation case would clearly lie outside the parameters of her EEOC complaint. *See Clark v. Chrysler Corp.,* 673 F.2d 921, 931 (7th Cir.), *cert. denied,* 459 U.S. 873, 103 S.Ct. 161, 74 L.Ed.2d 134 (1982). We need not, and do not, decide whether a checkmark of the sex discrimination box, by itself, is sufficient to raise a sex discrimination claim in an EEOC charge. Here Box made the checkmark in the "sex" box and the handwritten statement about the promotions to assistant manager—a position other evidence shows to be held almost exclusively by men; in addition, she stated in an EEOC questionnaire that she was not promoted because she was black and because she was a female. Taken together, these actions preclude summary judgment on the ground that Box failed to present the sex discrimination claim to the EEOC.

The district court also held that A & P was entitled to summary judgment because all the bookkeeper promotions went to women. Were Box's suit based only on A & P's refusal to promote her to bookkeeper, we would agree that Box could not maintain a sex discrimination claim. But the plaintiff argued to the district court that A & P also discriminated against her on the basis of sex by not training her for or promoting her to an assistant manager position. She also submitted evidence which, viewed in the light most favorable to her, shows that she complained about the assistant manager promotions in her EEOC charge and that, in the Chicago area, A & P promoted twenty-seven male but no female grocery clerks to assistant manager from 1975 to 1978. Since the district court did not discuss the assistant manager promotions in granting summary judgment and the reason given by that court does not address this issue, the fact that women received all bookkeeper promotions does not justify the summary judgment for A & P on Box's sex discrimination claim.

A & P argues that Box's sex discrimination claim cannot withstand a motion for summary judgment because Box offered no evidence that she had applied for an assist-

ant manager position or had identified a specific vacancy for which she was considered or should have been considered. The plaintiff counters that this court should not address the merits of these arguments because the defendant makes them for the first time on appeal.

 On appeal of a summary judgment, the appellate court can usually consider only those matters that were presented to the trial court. *See Frank C. Bailey Enterprises, Inc. v. Cargill, Inc.,* 582 F.2d 333, 334 (5th Cir.1978). True, we may affirm a summary judgment on any ground that finds support in the record, *see United States v. Winthrop Towers,* 628 F.2d 1028, 1037 (7th Cir.1980); *Miller v. Gateway Transportation Co.,* 616 F.2d 272, 275 n. 7 (7th Cir.1980), but the ground must have been adequately presented in the trial court so that the non-moving party had an opportunity to submit affidavits or other evidence and contest the issue. *See Charbonnages de France v. Smith,* 597 F.2d 406, 416 n. 9 (4th Cir.1979); *see also Arlinghaus v. Ritenour,* 622 F.2d 629, 638 (2d Cir.), *cert. denied,* 449 U.S. 1013, 101 S.Ct. 570, 66 L.Ed.2d 471 (1980). *But see Paskaly v. Seale,* 506 F.2d 1209, 1211 n. 4 (9th Cir.1974) (appellate court can affirm on any ground supported by the record and discussed in the appellate court briefs). Analogously, we may affirm a summary judgment on a ground not raised in the trial court if the grounds asserted in the trial court necessarily encompass the ground asserted on appeal. *See Hoffa v. Fitzsimmons,* 673 F.2d 1345, 1362 (D.C.Cir.1982).

In the district court, A & P argued in its reply memorandum that Box could not "cite any facts to support the claim" of sex discrimination; A & P cited a section of its initial memorandum that included the statement "when the undisputed facts which

emerge from a plaintiff's deposition show that she cannot show a *prima facie* case ..., summary judgment is appropriate." This argument, although not made as elaborately as the two arguments relied on by the district court in granting the motion for summary judgment, gave Box a fair opportunity to submit evidence showing that she could establish a prima facie case. *See SEC v. Southwest Coal & Energy Co.,* 624 F.2d 1312, 1317 (5th Cir.1980); *Rich v. United States Lines, Inc.,* 596 F.2d 541, 551 (3d Cir.1979). Since A & P's arguments that Box never applied for an assistant manager position and never identified which position she thinks she was discriminatorily denied are merely more particularized arguments why A & P believes Box cannot establish a prima facie case,[3] we will consider the merits of these arguments.

 Box's deposition testimony establishes that she never formally applied for a specific assistant manager position. If A & P had a formal system of posting job openings and allowing employees to apply for them, Box's failure to apply for an assistant manager position would prevent her from establishing a prima facie case. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *but see International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 367, 97 S.Ct. 1843, 1870, 52 L.Ed.2d 396 (1977) (no need to apply if the discriminatory practices "had been so successful as totally to deter job applications from members of minority groups"). But A & P had no system to ensure that all interested employees could apply for a job. The plaintiff submitted evidence, which A & P apparently does not dispute, that A & P store managers pro-

---

**3.** In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), the Supreme Court held that a plaintiff could establish a prima facie case of discrimination by showing (i) that she is a member of a protected group; (ii) that she applied and was qualified for a job for which the employer was seeking applicants; (iii) that she was rejected despite her qualifications; and (iv) that, after

her rejection, the position remained open and the employer continued to seek applicants with similar qualifications. *See also Mason v. Continental Illinois National Bank,* 704 F.2d 361, 365–66 (7th Cir.1983) (promotions to management positions). In arguing that Box never applied for an assistant manager position, A & P is focusing on the second element of the *McDonnell Douglas* approach.

moted employees to assistant manager without asking for applications or posting the opening. When an employer uses a promotion system in which employees do not apply for promotions but rather are sought out by managers, the application requirement of the prima facie case is loosened somewhat. *See Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757, 761 (9th Cir. 1980); *Rodgers v. Peninsular Steel Co.*, 542 F.Supp. 1215, 1219–20 (N.D.Ohio 1982). In this situation, the plaintiff can establish the application element of a prima facie case by showing that, had she known of an assistant manager opening, she would have applied. *See Rodgers*, 542 F.Supp. at 1220.

Box failed to offer evidence showing that, had she known of an opening for an assistant manager, she would have applied. Only three statements in the entire record lend any support to Box's claim. First, Box wrote on her EEOC complaint that individuals with less seniority had been promoted to assistant manager. In her deposition, Box stated that she had asked her store manager for training "[t]o move up, in order to make more money, bookkeeper, assistant manager, whatever." Third, Box stated in her affidavit that she had told her store manager that she "wanted to receive training for some other position so [she] could advance, for instance, into the assistant manager position."

None of these statements suggests anything more than a vague interest in the assistant manager position; indeed, the two most recent statements (the deposition and the affidavit) refer to the assistant manager position only as an example of the type of promotion in which Box might be interested. Although, as we held above, a nonapplicant plaintiff can establish a prima facie case if the employer did not solicit applications, such a plaintiff must show what positions she would have applied for had she known of the openings. The plaintiff has submitted evidence that an A & P employee could be promoted to assistant manager in any of the Chicago division stores and that A & P promoted twenty-seven male grocery clerks to assistant manager positions in A & P's Chicago division between 1975 and 1978. But, after four years of discovery, Box has failed to identify for which of these twenty-seven positions she would have applied. A motion for summary judgment requires the court to view the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences therefrom, but this procedural context neither requires nor permits a court to speculate what the plaintiff would have done. *Posey v. Skyline Corp.*, 702 F.2d 102, 111 (7th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). Since the uncontradicted evidence in the record reveals that Box never applied for a promotion to assistant manager, she needed to set forth specific facts showing that she could nonetheless establish a prima facie case. She needed to do more than show she had a general interest in obtaining some job other than the one she had. This is a close case, but we hold that the three statements of general interest were not enough and we therefore affirm the summary judgment for A & P.

## II.

Paula Brockhouse worked as a cashier-checker at an A & P store in Jacksonville, Illinois from November, 1970 to November, 1972 and from August, 1974 to August, 1978. A & P fired her on August 28, 1978 after she had a $9.50 overage in her cash drawer. Brockhouse admitted in her deposition that prior to this overage she had received warnings in December, 1977 and March, April, and August, 1978.

The district court granted summary judgment on Brockhouse's sex discrimination claim because "she ... presented no specific, concrete facts demonstrating that her discharge was motivated by her sex rather than by her five admitted errors, as a cashier, in the handling of her employer's cash." We agree. Under the *McDonnell Douglas* framework,

[t]he plaintiff [first] has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in

proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (citations omitted). We need not decide whether Brockhouse submitted evidence showing that she could make a prima facie case because, by offering uncontradicted proof of Brockhouse's disciplinary record, A & P has articulated a legitimate, nondiscriminatory reason for the discharge. *See Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1219 (7th Cir.1980), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981). Thus our focus is on the third step in the *McDonnell Douglas* approach: whether the proffered legitimate reason for Brockhouse's discharge was pretextual. *See Klein v. Trustees of Indiana University*, 766 F.2d 275, 282 (7th Cir.1985).

■ As a general principle, questions of motive and intent are inappropriate for summary judgment. *See Cedillo v. Int'l Ass'n of Bridge & Structural Iron Workers*, 603 F.2d 7, 11 (7th Cir.1979). Consequently, a defendant in a discrimination case is not entitled to summary judgment if the plaintiff submits evidence from which a court can reasonably infer that the articulated legitimate reason is, in fact, a pretext for discrimination. *See Brown v. Parker-Hannifin Corp.*, 746 F.2d 1407, 1411–13 (10th Cir.1984); *Gifford v. Atchison, Topeka and Santa Fe Railway*, 685 F.2d 1149, 1156 (9th Cir.1982). But a general principle is not a universal rule, and a district court should grant summary judgment if, viewed in the light most favorable to the

plaintiff, the evidence fails to demonstrate a genuine issue of material fact as to pretext. *See Parker v. Federal National Mortgage Association*, 741 F.2d 975, 981 (7th Cir.1984); *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.1983).

■ In opposition to A & P's motion for summary judgment, Brockhouse relied on her deposition testimony and her affidavit, which stated that (1) men acting as cashiers "were not subject to the disciplinary actions taken against female employees," (2) Don Howard, the store manager who fired Brockhouse, "told the store employees that if the males acting as cashiers had cash shortages the shortages would be absorbed by the office," and (3) Lance Gardner, a male employee at the store, had several cash shortages while she was at the store but was not disciplined. She also submitted statistical evidence to show that in A & P stores the management positions were almost always held by men.

Brockhouse's statements about how A & P treated men acting as cashiers differently than women cashiers does not preclude summary judgment because the statements do not comply with Federal Rule of Civil Procedure 56(e). That rule states that affidavits must be based on personal knowledge, must set forth such facts as would be admissible in evidence, and must "show affirmatively that the affiant is competent to testify" about those facts: Fed.R.Civ.P. 56(e); *see Pfeil v. Rogers*, 757 F.2d 850, 860 (7th Cir.1985). Nothing in Brockhouse's affidavits suggests, let alone affirmatively shows, that Brockhouse had personal knowledge of these facts and was competent to testify to them. As the district court correctly noted, "[c]onjecture, speculation, references to matters outside the [affiant's] personal knowledge, conclusory statements and bare assertions of the general truth of a particular matter will not suffice to withstand a properly supported motion for summary judgment."[4] *See*

---

**4.** The plaintiff argues that the district court should have told her if the reason for summary judgment was a deficiency in her affidavit. Reviewing the transcript of the proceedings, how-

ever, we think the district court clearly indicated that Brockhouse's affidavit did not set forth the type of evidence needed to show a genuine issue of material fact. In addition to

*Korf v. Ball State University,* 726 F.2d 1222, 1227 (7th Cir.1984); *Patterson,* 631 F.2d at 482; *Durovic v. Palmer,* 342 F.2d 634, 637 (7th Cir.) (en banc), *cert. denied,* 382 U.S. 820, 86 S.Ct. 48, 15 L.Ed.2d 66 (1965); *United States v. Wade,* 577 F.Supp. 1326, 1331 (E.D.Pa.1983).

Brockhouse's statement about Lance Gardner, when viewed together with her deposition testimony,[5] comes closest to satisfying Rule 56(e). But even if it did satisfy the rule, this statement fails to create a genuine issue of material fact. Brockhouse referred to Gardner as "a male employee," not as a male cashier. Brockhouse stated in her deposition that male employees at the Jacksonville A & P usually stocked shelves or bagged groceries and would only operate a cash register "once in awhile." She named only Melvin Eiling as a man who cashiered a lot. Although an issue whether two employees are similarly situated is normally fact specific, *see Brown,* 746 F.2d at 1412, here the only reasonable inference is that Gardner did not cashier very often. Brockhouse also stated in her deposition that the man whom A & P did not discipline was a new employee. Evidence that A & P disciplined Brockhouse, an experienced, full-time cashier, for cash shortages but did not discipline a new employee who only occasionally operated a cash register does not create a genuine issue of fact as to pretext.

At her deposition, Brockhouse stated that she never saw Don Howard discipline a man. This general statement is not enough to avoid summary judgment; she needed to show both that a male had committed a *comparable* offense and that Howard had failed to discipline him. The burden of producing evidence sufficient to resist a summary judgment motion is not onerous. *See Klein,* 766 F.2d at 282. In the present case, Brockhouse had to produce evidence of *specific* facts that, viewed in the light most favorable to her, supported a reasonable inference that the reason given for her discharge was a pretext. *See Posey,* 702 F.2d at 105–06; *see also Sweat v. Miller Brewing Co.,* 708 F.2d 655, 656 (11th Cir.1983) (affidavit set out specific facts). A motion for summary judgment requires the court to consider only reasonable inferences, not every conceivable inference. *See Hermes,* 742 F.2d at 353; *Parker,* 741 F.2d at 980.

The plaintiff also argues that her statistical evidence precludes a summary judgment. A plaintiff may submit probative statistical evidence to show that the employer's proffered reason for the employment decision was a pretext for discrimination. *See Rodriguez v. Board of Education of Eastchester Union Free School District,* 620 F.2d 362, 367 (2d Cir.1980). In the present case, the plaintiff relies on statistics showing that A & P management positions tended to be held by men and that A & P usually promoted men to management positions. Although this statistical evidence certainly has relevance for a claim of discrimination in promotions, it has little value for a claim that an employer discriminated in discipline. In a discipline or discharge case, relevant statistics would show that an employer disciplined or discharged women at a significantly higher rate than it

the statement quoted above, the district court also stated that Brockhouse "presented no *specific, concrete* facts demonstrating that her discharge was motivated by her sex rather than by her five admitted errors as a cashier." (Emphasis added.)

**5.** In her deposition, Brockhouse referred to a new male employee who had not been disciplined for a cash shortage. She contends in her reply brief to this court that Lance Gardner is the individual she referred to in her deposition. Of course arguments in briefs are not evidence and cannot establish the unnamed employee's identity. Nonetheless, in her deposition Brock-

house cited no other example of A & P's failure to discipline male employees and she named no other male employees in her affidavit. Viewing this evidence in the light most favorable to Brockhouse, Gardner is the unnamed male employee Brockhouse referred to in her deposition. The deposition testimony also yields a reasonable inference that Don Howard was the manager who failed to discipline Gardner. But the deposition testimony does not cure the affidavit's failure to state that Brockhouse had personal knowledge of the incident. In fact, the deposition testimony suggests that Brockhouse learned the information from a neighbor.

disciplined or discharged men. *See Coates v. Johnson & Johnson,* 756 F.2d 524, 545 (7th Cir.1985). The statistics submitted by Brockhouse therefore fail to create a genuine issue of fact whether the reason given for Brockhouse's discharge was a pretext.

### III.

We affirm the summary judgments on both claims.[6]

SWYGERT, Senior Circuit Judge, dissenting.

I would reverse both orders of summary judgment. Box and Brockhouse have satisfied their duty under Fed.R.Civ.P. 56(e) to go beyond bare allegations of sex discrimination and to come forward with "specific facts showing that there is a genuine issue for trial."

The majority reasons that summary judgment against Box's sex discrimination is appropriate because she fails to come forward with specific facts that indicate she can establish one element of a prima facie case of disparate treatment with respect to promotion: that she applied for an available position. The majority acknowledges that Box's deposition and affidavit tend to establish that she repeatedly requested training for and promotion to any position above cashier, including that of assistant manager.

Perhaps this indicates, as the majority believes, that Box's interest specifically in the assistant manager position was "vague," and therefore not a bona fide application for employment. On the other hand, Box's desire for *any* kind of promotion may also be indicative of the pervasiveness of discrimination at A & P and the desperation that is bred when an employer channels the vast majority of its female employees into low-paying jobs like that of cashier and offers no formal system of promotion. *See Reed v. Lockheed Aircraft Corp.,* 613 F.2d 757, 761–62 (9th Cir.1980) (no need to show that plaintiff applied for promotion where such an application would be futile). It is enough that Box has gone beyond her pleadings to show some evidence indicating that she requested promotion to assistant manager. *Cf. Munson v. Friske,* 754 F.2d 683, 690 (7th Cir.1985) (summary judgment on questions of motive and intent not proper unless party resisting motion "presents no indications of motive and intent supportive of his position").

The majority also reasons that Box must show which one of the twenty-seven promotions to assistant manager granted to others during her tenure she desired. In other words, it would be unlawful to deny Box promotion on the basis of sex in one specific instance; but it was entirely appropriate to pass her over for promotion for the same impermissible reason twenty-seven times. Suffice to say that Box was interested in all twenty-seven promotions and was denied each one. Furthermore, the record evidence tends to show that an employee at A & P simply did not apply to any specific promotion at any specific store. Rather, an employee was "noticed" by supervisory personnel who toured the stores and was then approached when an assistant manager position became available somewhere in the metropolitan area. *See* Appellant's Appendix at 206, 209–10, 214 (reprinting deposition of John Rogers).

As for Brockhouse, the majority finds summary judgment appropriate because of her failure to come forward with specific facts to show that her discharge for cash overages was pretextual. Even if this is true, summary judgment is still improper because Brockhouse does not confine her sex discrimination claims to the circumstances surrounding her discharge. Like Box, Brockhouse alleges that A & P had

---

**6.** Judge Swygert's dissent ably points out the other side of these close cases. In his dissent, however, Judge Swygert suggests that summary judgment on Brockhouse's claim was also erroneous because Brockhouse's complaint alleged discrimination in job assignment, promotion, and transfer policies. In her appeal Brockhouse argued only the discipline issue, apparently abandoning her claims of discrimination in other areas of employment. *See Publishers Resource, Inc. v. Walker-Davis Publications, Inc.,* 762 F.2d 557, 560 (7th Cir.1985) (issue not raised in initial appellate brief is not properly presented for review).

"limited the job opportunities available to women through discrimination in terms of job assignment, promotion, and transfer policies" throughout her tenure. Appellant's Appendix at 30 (reprinting first amended complaint of Brockhouse). According to her deposition, Brockhouse requested reassignment to *any* higher position with longer hours, A & P had no formal application system, and A & P promoted a male stockman to assistant manager in her store. Appellant's Appendix at 80, 99–100. Thus, even if Brockhouse's discriminatory discharge claim is unsupported, her claim of discriminatory denial of promotion during the years prior to her discharge is supported by sufficient facts to survive a summary judgment motion.

In any event, I disagree with the majority's decision to dismiss Brockhouse's claim of pretextual discharge. Brockhouse's theory of recovery is that A & P tended to subject women to harsher discipline than men. She cites as an example A & P's failure to discipline Lance Gardner, a male employee, for the same kind of cash discrepancies. The majority reasons, however, that Gardner is not a similarly situated employee because he did not work full-time as a cashier. Yet that is precisely the point. Brockhouse testifies in her deposition that, with one exception, there were no full-time male cashiers in her store. Appellant's Appendix at 86–87. The position was considered a female job, and men were channeled into other, more remunerative jobs. Thus, in the Chicago metropolitan area, 820 of the 892 utility clerks were male, 90 of the 97 dairy heads were male, 139 of the 139 produce heads were male, 180 of the 183 assistant managers were male, and 132 of the 137 store managers were male. Appellant's Appendix at 132 (reprinting A & P documents). Generally, women became "grocery clerks" or "deli clerks." *See id.* The one supervisory position dominated by women was that of head cashier. *See id.*

In short, comparison between similarly situated employees of the opposite sex are difficult only because of A & P's practice of segregating jobs by sex. Guidance out of this quandary can be found in the statute itself. The statute states that "[i]t shall be an unlawful employment practice for an employer ... to limit, segregate, or classify his employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(2) (1982). Thus, the statute prohibits in sweeping terms segregation by sex that adversely affects the individual employee. It says nothing about "similarly situated" employees or the elements of a prima facie case; such concepts are judicially created tools of analysis, not the ends of the statute. *See Jayasinghe v. Bethlehem Steel Corp.*, 760 F.2d 132, 136 (7th Cir.1985). Where a peculiar set of facts renders use of one of these tools inapt, the tool, not the statute, must give way. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 1824 n. 13, 36 L.Ed.2d 668 (1973) (elements of prima facie proof may vary in different settings).

Where a plaintiff can point to specific evidence of sexual segregation and where the only comparisons between treatment of the different sexes possible under the circumstances indicate disparate treatment, then a plaintiff is entitled to at least a trial on the merits. Substantial anecdotal and statistical evidence supports Brockhouse's claim of sexual segregation, and the comparison between her and a part-time male cashier indicates that she was subjected to harsher discipline than the comparable male.

Finally, I wish to voice my concern about two separate aspects of this case. First, I deplore the increasing use of summary judgment when the posture of the case calls for a trial. Pressures allegedly caused by heavy caseloads ought not be the excuse for violating both the spirit and the literal terms of Fed.R.Civ.P. 56.

Second, it is with regret that I am constrained to say that the disposition of this case seems to reflect a recent trend in the

federal courts to blunt the salutary purpose of Title VII of the Civil Rights Acts of 1964. That purpose was clearly stated by Chief Justice Burger in *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1970).

> Discriminatory preference for any group, minority or majority, is precisely and only what Congress has proscribed. What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification.

Sex and race discrimination with respect to employment opportunities and promotions should be eliminated "root and branch," *cf. Green v. County School Board,* 391 U.S. 430, 438, 88 S.Ct. 1689, 1694, 20 L.Ed.2d 716 (1967), and not be left to fester and poison the ideal of equal justice for all segments of our society.