**Catherine C. CARROLL, Plaintiff,**

v.

**Gordon R. ENGLAND, Secretary of the Department of the Navy, Defendant.**

**No. CIV.A. 02–01072(HHK.**

United States District Court, District of Columbia.

May 18, 2004.

---

**5.** An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

Lisa Lyons Ward, Ellicott City, MD, for Plaintiff.

Oliver W. McDaniel, Washington, DC, for Defendant.

## MEMORANDUM OPINION

KENNEDY, District Judge.

Catherine C. Carroll ("Carroll"), brings this action against Gordon R. England, Secretary of the Navy, in his official capacity ("Navy" or "the agency"), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, alleging that the Navy discriminated against her on the basis of her race, gender, disability, and protected EEO activity. Before the court is the Navy's motion to dismiss or, in the alternative, for summary judgment. Upon consideration of the motion, the opposition thereto, and the record of this case, the court concludes that the motion must be granted.

## I. BACKGROUND

Carroll, an African–American female, worked at Naval Sea Systems Command ("NAVSEA"), a division of the Navy, from 1991 until her resignation on December 3, 2002. Sometime in 1983, as the result of an automobile accident, Carroll began to suffer from migraine headaches, and in July 1995, she was placed on Alternate Work Schedule 5, the Navy's most flexible work schedule. Carroll claimed that her headaches worsened after a hit-and-run accident in July 1999. When Carroll made the administrative complaint that sets forth the allegations that underlie the present action, she was employed as a Personnel Assistant, GS–203–08.

### 1. Circumstances Underlying VLTP and Flexible Schedule Claims (Counts I and II)

In June 1997, Carroll submitted an application to become a "leave recipient" under the Voluntary Leave Transfer Program ("VLTP"), which allows federal employees to donate paid leave to other federal employees under certain circumstances. In March 2000, Maria Gay ("Gay"), program administrator in NAVSEA and Carroll's VLTP coordinator, determined that Carroll and six other VLTP participants whose medical information was more than six months old needed to update the documentation of their conditions. The updated documentation was due no later than April 4, 2000. When Gay did not receive an update from Carroll, Gay informed Carroll that she had been removed from VLTP effective April 22, 2000, but that she could be reinstated if she provided the updated documentation. Carroll provided a doctor's certificate dated May 25, 2000. Nevertheless, on June 13, 2000, Gay informed Carroll by email that she still needed to provide more information. The Navy claims that Gay requested additional medical information, including a doctor's statement describing the "medical emergency" from when Carroll entered the VLTP until the time the additional information was requested. *See* Def.'s Mot. for Summ. J. at 6 (citing Def.'s Ex. B. ("Gay Decl.")). Carroll as-

serts that Gay requested that she resubmit her original application for the VLTP because it was missing from NAVSEA's files. *See* Pl.'s Opp'n at 4 (citing Def.'s Ex. E at 2 ("Carroll Aff.")). In any event, by June 15, 2000, Carroll decided to discontinue her effort to re-enter the VLTP "because [she] no longer trusted the VLTP Coordinator or management's word that the documents would maintain the necessary confidentiality of [her] need to be placed in the VLTP." Carroll Aff. at 3.

On June 15, 2000, Carroll met with her second-level supervisor, William McCafferty ("McCafferty") and asked to be placed on an alternate work schedule, AWS–2, which would allow her to vary the time, between 6:30 a.m. and 9:00 a.m., when she would report to work. Carroll claims McCafferty did not act on her request. McCafferty asserts that at the time he believed that Carroll was already allowed to vary her arrival time. *See* Def.'s Ex. D at 85, 87 (Tr. of Investigation of Renee Loudermill) ("Tr."). In any case, on August 7, 2000, McCafferty granted Carroll's request for flexible arrival time but required her to send him an email when she arrived before 6:30 a.m. and after 9:00 a.m. Carroll claims that the requirement—obliging her to check in by email—constituted a refusal of her request for reasonable accommodation, Carroll Aff. at 4–5, and that McCafferty's letter was the first time the Navy had approved of the flexible schedule at all. Def.'s Ex. A ("Carroll Dep.") at 72. McCafferty insists that the letter simply reaffirmed that Carroll was already entitled to a flexible arrival time. On December 21, 2000, Carroll received, on a permanent basis, the flexible schedule she requested, though McCafferty granted her request "even in the absence of . . . requested documentation." Tr. at 77.

On August 18, 2000, Carroll filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging race, sex and disability discrimination resulting from the agency's failure to grant her a flexible work schedule. On December 11, 2000, she sought to amend her complaint to allege discrimination in her removal from the VLTP. The agency denied her request, indicating that though she mentioned her removal from VLTP in EEO counseling, she failed to include it in her formal complaint.

### 2. Circumstances Underlying Other Claims

When the events underlying Counts I and II were happening, Carroll claims that she experienced other acts of discrimination. First, on June 12, 2000, a Personnel Management Specialist position (GS–12) became available. The job announcement closed on June 23, 2000. The Navy asserts that, as of July 14, 2000, only one candidate appeared on the Certificate of Eligibles—a non-disabled African–American female—and she was hired. Carroll alleges, however, that she applied for the job but that the Navy did not consider her application.

Second, on August 3, 2000, Carroll requested an ergonomic chair because of her "chronic back pain." She made the request again on September 15, 2000, and selected a chair on September 28, 2000. It was not until October 23, 2000, however, when the chair was ordered and picked up.

Third, on September 18, 2000, two job announcements for Management Analyst positions within NAVSEA were posted on the Navy and NAVSEA websites. The announcements closed on September 22, 2000. On October 3, 2000, the jobs were filled by a white, disabled female, and a white, non-disabled female.

Fourth, and finally, Carroll received two incentive awards—one on June 4, 2000 for $250 and one on July 30, 2000 for $500. Traditionally, NAVSEA gave performance awards at the end of the fiscal year based on an individual's performance rating. However, starting in the late 1990s, NAVSEA began giving incentive awards during the year rather than year-end performance awards. Def.'s Ex. F at 1 ("Flynn Aff."). Bonita Flynn, director of corporate operations for Carroll's division, NAVSEA 09B, decided that only incentive awards would be given to employees in fiscal year 2000. *See id.* at 1–2. Carroll alleges that some employees received incentive awards during 2000 and year-end performance awards.

### 3. Allegations of the Complaint

On May 31, 2002, Carroll timely filed the present action, alleging the following:

(1) The Navy refused to reasonably accommodate her disability by removing her from the VLTP, Compl. ¶¶ 13–15 ("Count I");

(2) The Navy denied her reasonable request for a flexible work schedule because of her race and disability, Compl. ¶¶ 16–18 ("Count II");

(3) The Navy failed to reasonably accommodate her disability by failing to timely provide an ergonomic chair, Compl. ¶¶ 19–21 ("Count III");

(4) The Navy did not consider her for the Personnel Management Specialist position because of her disability and in retaliation for her prior requests, Compl. ¶¶ 22–24 ("Count IV");

(5) The Navy failed to provide her a year-end award in fiscal year 2000 because of her race, gender and disability, and in retaliation for her EEO activity, ¶¶ 25–27 ("Count V");

(6) The Navy excluded her from eligibility for two positions because of her disability and in retaliation for her previous EEO activity, Compl. ¶¶ 28–29 ("Count VI").

## II. ANALYSIS

### A. Counts III and IV

▮▮▮ The Navy asserts that Carroll's claims in Counts III and IV are barred because she failed to exhaust administrative remedies with respect to these claims. Consequently, the Navy contends that this court does not have subject matter jurisdiction with respect to these claims.[1] The Navy is correct.

1. A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) should not be granted "unless plaintiffs can prove no set of facts in support of their claim which would entitle them to relief." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir. 1994); *Beverly Enters., Inc. v. Herman*, 50 F.Supp.2d 7, 11 (D.D.C.1999). At the stage of litigation when dismissal is sought, a plaintiff's complaint must be construed liberally, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C.Cir.1997).

A court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case. In resolving motions for lack of jurisdiction, unlike motions brought under Rule 12(b)(6), courts are generally free to consider relevant materials outside the pleadings. *Artis v. Greenspan*, 223 F.Supp.2d 149, 152 (D.D.C.2002) ("A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction or subject-matter jurisdiction."). Despite the favorable inferences a plaintiff receives on a motion to dismiss, it is still the plaintiff's burden to prove jurisdiction. *See Am. Farm Bureau*, 121 F.Supp.2d 84, 90 (D.D.C.2000).

■ In actions brought under Title VII and the Rehabilitation Act, a court can exercise jurisdiction over only those claims contained in a plaintiff's administrative complaint or claims "like or reasonably related to" those in the administrative complaint and with respect to which the plaintiff exhausted her administrative remedies. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C.Cir.1995) (internal quotation marks and citation omitted); *Caldwell v. ServiceMaster Corp.*, 966 F.Supp. 33, 49 (D.D.C.1997). It is an agency's burden to prove by a preponderance of the evidence the plaintiff's failure to exhaust administrative remedies. *Brown v. Marsh*, 777 F.2d 8, 13 (D.C.Cir.1985) ("Because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it.").

Under 29 C.F.R. § 1614.105(a)(1), an employee who alleges discrimination must consult an agency EEO counselor before filing a complaint of discrimination, and must do so within 45 days of the "matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.101(a)(1).

Carroll does not dispute the fact that she failed to exhaust her administrative remedies with regard to Counts III and IV. Instead, she asserts that her failure to do so is excused. Carroll's assertions in this regard cannot withstand scrutiny.

*1. Ergonomic Chair (Count III)*

Carroll excuses her failure to exhaust her administrative remedies with regard to Count III (untimely provision of an ergonomic chair) by arguing that a "reasonable relation" exists between Count III and her first EEO Complaint, which included her flexible work schedule and VLTP removal claims. This argument is without merit.

■ A Title VII claim in federal court is limited in scope and must be "like or *reasonably related* to the allegations of the [EEO] charge and growing out of such allegations." *Park*, 71 F.3d at 907 (citing *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir.1994)) (emphasis added). The Seventh Circuit clarified this requirement by explaining that to be reasonably related, an "EEOC charge and the complaint must, at a minimum, describe the *same conduct* and implicate the *same individuals.*" *Kersting v. Wal–Mart Stores*, 250 F.3d 1109, 1119 (7th Cir.2001) (citing *Cheek*, 31 F.3d at 501) (emphasis in original).[2] This court adopts the Seventh Circuit's formulation.

■ Clearly then the circumstances set forth in Count III and Carroll's EEOC complaint are not reasonably related. While in both complaints the "same individuals" are alleged to have discriminated against Carroll, Count III and the EEOC charges describe discrete events and, thus, different conduct. The EEOC charges allege the Navy failed to accommodate Carroll's migraine headaches when it removed her from VLTP and delayed in providing a flexible work schedule. Count III, however, alleges the Navy failed to accommodate her back pain by untimely providing her ergonomic chair. Carroll fails to show that these separate events involve the

---

**2.** For purposes of the exhaustion of remedies rule, retaliation is another way in which an untimely claim might be related to an EEOC charge. An employer may engage in conduct that, though otherwise factually unrelated a plaintiff's EEOC complaint, constituted retaliation for filing that EEOC charge. *See Marshall v. James*, 276 F.Supp.2d 41, 54 (D.D.C. 2003). Carroll does not allege that the Navy's untimely provision of the chair was retaliatory. Compl. ¶¶ 19–21.

same conduct by the Navy.[3] As a result, the court concludes that Carroll failed to exhaust her administrative remedies with respect to the claims in Count III and, therefore dismisses Count III for lack of subject matter jurisdiction.

### 2. Non-promotion (Count IV)

■ With respect to Count IV, the Navy argues that Carroll failed to exhaust her administrative remedies because she did not initiate EEO counseling within 45 days of a discriminatory event, as required by 29 C.F.R. § 1614.105(a)(1). Specifically, the Navy maintains that Carroll knew she was not selected for a promotion on July 11, 2000, but failed to initiate counseling until November 10, 2000—more than 45 days thereafter. Carroll insists that as of July 11, 2000, she did not know someone else received the job she sought and, in the alternative, that she sent an email to EEO counselor Lorena Briscoe ("Briscoe") that initiated EEO counseling in accord with § 1614.105(a)(1). The summary judgment record supports neither of Carroll's arguments.

■ First, while Carroll may not have known with certainty on July 11, 2000, that she had been denied the promotion for which she applied, actual knowledge of a discriminatory act is not required. Constructive knowledge of such an act will start the 45–day limitation period. *Cf.* 29 C.F.R. § 1614.105(a)(2) (extending 45–day period only if an employee *"reasonably should not have been known that the discriminatory matter* .... *occurred."*). On

July 11, 2000, Carroll sent Briscoe an email that recounted conversations with other NAVSEA employees. *See* Def.'s Ex. 1 at 2 ("Carroll Email"). Carroll noted seven times her belief, based on these conversations, that the position she sought was slated for another employee, Sonya Samuels. *Id.* More importantly, Carroll had heard that the person who collected applications for the job did not have Carroll's application and was not considering it. *See id.* ("Today, Sonya stated that Marsha Arrington told her 'That the only application that she had was hers,' (I'm wondering what happened to my application ...)."). As of July 11, 2000, Carroll believed her application was no longer being considered, whether Samuels or another employee received the position. *See id.* Carroll does not question the truth of her co-workers' statements. The only reasonable interpretation of the email is that Carroll believed she had suffered an adverse, possibly discriminatory act. As a result, the 45–day limit under § 1614.105(a)(1) began to run on July 11, 2000.

Second, Carroll argues that if July 11, 2000 was the beginning of the 45–day period, her email to Briscoe that day initiated EEO counseling. *See* Pl.'s Opp'n at 16 (arguing that Briscoe was NAVSEA's designated EEO point person). This argument is meritless. Understandably, Briscoe did not consider the email to be a formal initiation of EEO counseling because "Ms. Carroll frequently forwarded emails to me, and knew the proper proce-

---

**3.** Carroll also suggests that a brief mention of chronic back pain in her EEOC Complaint excuses her failure to exhaust remedies. Pl.'s Opp'n at 13. This argument is meritless because such a terse reference to back pain did not serve to put the Navy on notice of the more specific allegation that it failed to provide, in a timely fashion, an ergonomic chair. *See Park,* 71 F.3d at 907 (noting that the

exhaustion rule "services the important purpose of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision") (internal quotation and editing marks omitted); *id.* (finding that a court "cannot allow liberal interpretation of an [EEO] charge to permit a litigant to bypass the Title VII administrative process").

dures for filing an EEO complaint." Defs.' Ex. 1 at 1 ("Briscoe Decl."). Carroll does not dispute that, as of July 11, 2000, she knew NAVSEA's policy under § 1614.105(a)(1), which was that "contact was not initiated until accompanying paperwork was completed, signed and returned to the EEO Office." Briscoe Aff. at 1. Most critically, on July 11, 2000, the day she emailed Briscoe, Carroll initiated EEO counseling on her VLTP and flexible schedule claims (Counts I and II). Carroll could have initiated EEO contact for her non-promotion claim along with Counts I and II, but she did not. As with Count III, Count IV must be dismissed because Carroll did not exhaust her administrative remedies with respect to the claims set forth in Count IV.

## B. Failure to Promote (Count VI)

 A threshold requirement for a prima facie case when a plaintiff alleges that she was not promoted because of unlawful discrimination is that the plaintiff actually applied for the position denied her.[4] *Lathram v. Snow*, 336 F.3d 1085, 1089 (D.C.Cir.2003) (finding that "an ele-

ment of a prima facie case of non-promotion is that the plaintiff '*applied for* and was denied an available position for which he/she was qualified.'") (citing *Stella v. Mineta*, 284 F.3d 135, 139 (D.C.Cir.2002)) (emphasis in original). The Navy argues that Carroll did not apply for the Management Analyst positions she alleges the Navy denied her on discriminatory grounds. Carroll concedes that she did not apply for the positions at issue but invokes two exceptions to the application requirement, futility and non-solicitation, alleging that NAVSEA "preselected" candidates to fill the vacancies. Neither exception applies.

 First, a plaintiff's failure to apply for a position is excused if applying would have been futile because members of her protected class were subject to "gross and pervasive discrimination," *Lathram*, 336 F.3d at 1089 (citing *Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 364–65, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). To prove futility, a plaintiff must show that (1) her employers' policy of "gross and pervasive" discrimination communicated to a

---

**4.** The Navy moves to dismiss Counts I, II, V and VI, for failure to state a claim, or in the alternative, for summary judgment. On a Rule 12(b)(6) motion to dismiss, if either party submits matters outside the pleadings that are not excluded by the court, the court shall treat the motion as one for summary judgment. FED. R. CIV. P. 12(b); *Polk v. Dist. of Columbia*, 121 F.Supp.2d 56, 60 (D.D.C. 2000); *see* 5A CHARLES WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE 2d § 1366 (2d ed.1990). Because both parties submitted matters outside the pleadings, the court treats Navy's motion as one for summary judgment.

Under Rule 56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Material facts are those "that might affect the outcome of the suit under the gov-

erning law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a summary judgment motion, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505. The non-movant's opposition must consist of more than unsupported allegations or denials—it must be supported by affidavits or other competent evidence setting forth specific facts identifying a genuine issue for trial. FED. R. CIV. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C.Cir.1987). If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

protected class the futility of applying, *Int'l Bhd. of Teamsters*, 431 U.S. at 367–69, 97 S.Ct. 1843, and (2) that she "would have applied for the job had it not been for those practices." *Id.* at 368, 97 S.Ct. 1843. Because it is intended to reach only "the most invidious effects of employment discrimination," *id.* at 367, 97 S.Ct. 1843, futility is as a practical matter hard to prove. *See id.* at 367–68, 97 S.Ct. 1843 (noting that a plaintiff invoking futility has "the not always easy burden of proving that he would have applied for the job had it not been for those practices.").

Carroll provide no evidence of "gross and pervasive" discrimination at NAVSEA either against disabled employees or in retaliation for engaging in protected EEO activity.[5] On the other hand, the Navy points out that a disabled employee, Ada Palmer, not only applied for the Management Analyst position Carroll sought but was also hired. This circumstance, which Carroll does not deny, completely undermines her futility argument.[6] As a result, the court finds that futility does not excuse Carroll's failure to apply.

■■■■■ Turning to the second exception, a plaintiff's failure to apply for a position is excused if her employer filled the position without soliciting applications. *See Terry v. Gallegos*, 926 F.Supp. 679, 704 (W.D.Tenn.1996) (citing *Box v. A & P Tea Co.*, 772 F.2d 1372, 1377 (7th Cir.1985)). This defense is unavailable if an employer

openly advertised job vacancies to all employees. *Cf. Box*, 772 F.2d at 1376–77 (finding a plaintiff met application requirement by showing employer had no "formal system of posting job openings"). Carroll cannot prevail on this exception because she concedes that the Navy openly and publicly posted announcements for the Management Analyst vacancies, even if she believes they were not open long enough. Pl.'s Opp'n at 18 (arguing that NAVSEA kept vacancy announcements open one week in order to "limit the numbers [sic] of potential applications for the positions"). While claiming she was "never made aware of the announcement," *id.*, Carroll never denies that the announcements were posted on the Navy and NAVSEA websites. *See* Def.'s Stmt. of Facts ¶ 41 (citing Def.'s Ex. H). The non-solicitation exception, then, also does not excuse Carroll's failure to apply for the management analyst jobs. Consequently the Navy's summary judgment motion must be granted as to Count VI.

## C. Adverse Employment Actions (Counts I, II & V)

■■■■■ Disparate treatment claims under Title VII are governed by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This framework also applies to Rehabilitation Act claims. *Swanks v. Wash. Metro. Area Transit Auth.*, 179

---

5. Carroll cites a NAVSEA letter to the two candidates eventually selected for the Management Analysts positions, in order to "demonstrate[ ] how prevalent preselection is within NAVSEA." Pl.'s Opp'n at 17 (citing Pl.'s Ex. 17 at 2–3 (Poindexter Mem. to Ada Palmer and Gayle Webb)). The letter was not submitted as an exhibit, and the court does not consider it. In any case, the letter, as cited by Carroll, does not support a showing of gross and widespread discrimination needed to prevail under *Teamsters*. *See id.*

6. While a plaintiff "need not demonstrate that she was replaced by a person outside her protected class in order to carry her burden of establishing a prima facie case [of discrimination]," *Stella*, 284 F.3d at 146, Carroll faces the more difficult task of establishing "gross and pervasive" discrimination under *Teamsters* to prevail on futility. 431 U.S. at 368–69, 97 S.Ct. 1843.

F.3d 929, 933 (D.C.Cir.1999). To establish prima facie discrimination under Title VII, the plaintiff must show that she: (1) is a member of a protected class; (2) suffered an adverse employment action; and (3) was treated differently than similarly situated employees who are not members of the class. *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. 1817; *Brown v. Brody,* 199 F.3d 446, 452 (D.C.Cir.1999). The elements of a prima facie case differ somewhat for Rehabilitation Act[7] and retaliation[8] claims, though both also require proof of an adverse employment action. *Swanks,* 179 F.3d at 934; *Carney v. Am. Univ.,* 151 F.3d 1090, 1095 (D.C.Cir.1998).

■■■ The Navy argues that Carroll fails to show that the circumstances about which she complains in Counts I, II and V are adverse employment actions. The court agrees. In general, an adverse employment action includes a "diminution in pay or benefits" or "some other materially adverse consequences affecting the terms, conditions, or privileges of employment ... such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." *Brown,* 199 F.3d at 456–57. Employment actions which, for instance, result in a loss of status, a bruised ego, or a few poor work assignments do not rise to the level of adverse employment actions. *See, e.g., Freedman v. MCI Telecommunications Corp.,* 255 F.3d 840, 848 (D.C.Cir.2001) (finding that a temporary assignment to less desirable work tasks is not an adverse

employment action absent "objectively tangible harm"). The court now turns to Carroll's specific charges.

### 1. Removal from VLTP (Count I)

■■■ Carroll alleges that the Navy failed to reasonably accommodate her disability by removing her from VLTP. The Navy rejoins that Carroll failed to take advantage of a reasonable accommodation by not providing medical documentation. The court agrees with the Navy.

■■■ Persuasive authority indicates that employers need only provide " 'alternative employment opportunities reasonably available under the employer's existing policies.' " *Terrell v. USAir,* 132 F.3d 621, 627 (11th Cir.1998) (citing *Sch. Bd. of Nassau County v. Arline,* 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987)). Furthermore, when the duty to reasonably accommodate arises, both employee and employer must "exchange essential information and neither side can delay or obstruct the process." *Barnett v. U.S. Air, Inc.,* 228 F.3d 1105, 1114–15 (9th Cir.2000), *vacated and remanded on other grounds,* 532 U.S. 970, 121 S.Ct. 1600, 149 L.Ed.2d 467 (2001). Finally, employers may " 'gather sufficient information from the applicant and qualified experts as needed to determine what accommodations are necessary ....' " *Id.* at 1115 n. 6.

Given this legal backdrop, the question is not whether Carroll's removal from the

---

**7.** The Rehabilitation Act incorporates the standards of the Americans with Disabilities Act ("ADA") in determining whether employment discrimination has occurred. *See* 29 C.F.R. § 1614.203(b) (citing ADA standards in 29 C.F.R. pt. 1630). A prima facie case of discrimination under the ADA requires a plaintiff to show that she (1) had an ADA-recognized disability; (2) was qualified for the position with or without a reasonable accommodation, and (3) suffered an adverse action

because of the disability. *Swanks,* 179 F.3d at 934.

**8.** In retaliation cases, a plaintiff must demonstrate that "(1) she engaged in statutorily protected activity; (2) her employer took an adverse personnel action against her; and (3) a causal connection exists between the two." *Carney v. Am. Univ.,* 151 F.3d 1090, 1095 (D.C.Cir.1998).

VLTP was generally an adverse action or whether Carroll can persuade this court now that her medical emergency was genuine. Rather, the relevant, and narrower, issue is the reasonableness of the Navy's demand for up-to-date (i.e., within six months) documentation that Carroll's migraines were a "medical emergency." Carroll's complaint begs this question, Compl. ¶¶ 14–15 (arguing that Navy "*unjustifiably* removed" her from VLTP, and that removal was a "refusal to *reasonably* accommodate") (emphasis added), without answering it. Carroll never suggests that the Navy's specific requests for documents were unreasonable,[9] and fails to explain why she could not provide the documents requested.

 Instead, Carroll argues that the Navy's mis-application of its VLTP policies were adverse actions. First, Carroll claims NAVSEA failed to follow its own procedures when it removed her from the VLTP. However, she does not provide record support for this assertion and fails to even allege that these rules apply to VLTP eligibility. *See* Pl.'s Opp'n at 22 (purporting to cite NAVSEA rules, titled "Termination of Medical Condition," that do not mention VLTP). Second, Carroll alleges that the Navy selectively applied its policy and did not require updated documentation from co-workers, outside her protected classes, but allowed them to remain on VLTP. A court must deny a defendant's summary judgment motion if the plaintiff provides evidence that her employer selectively applied an otherwise reasonable accommodation. *See Breen v. Dep't of Trans.*, 282 F.3d 839, 842–43 (D.C.Cir. 2002). Carroll failed to provide record evidence showing that other employees were allowed to remain on VLTP. *See* Pl.'s Opp'n at 25 (citing Pl.'s Exs. 2 & 23, not submitted to the court). Supported by evidence, these arguments may have raised genuine issues of fact. Because Carroll fails to provide support for her arguments, however, the court grants the Navy's summary judgment motion with respect to Count I.

### 2. Denial of Flexible Schedule (Count II)

 Carroll alleges adverse employment actions by the Navy when it (1) encumbered her interim flexible schedule, from August 7 to December 21, 2000, with a "special restriction" and (2) took seven weeks to grant an interim flexible work schedule. The court disagrees.

First, Carroll fails to show that the "special restriction" imposed on her from August 7 to December 21, 2000 constituted "objectively tangible harm" under the *Brown* standard. 199 F.3d at 457. During this period and on an interim basis, McCafferty allowed Carroll to work a flexible schedule if she agreed to send him an email upon arriving and departing from work on days when she arrived at work before 6:30 a.m. or after 9:00 a.m.[10] Carroll argues that "check-in" requirement was contrary to NAVSEA policy, *see* Pl.'s

9. Carroll attempts to allocate to the Navy the burden to prove that her request to stay on VLTP was an "undue burden." *Id.* at 23. However, a plaintiff must prove an agency failed to provide a reasonable accommodation *before* a defendant must prove the accommodation was an undue burden. *See U.S. Airways v. Barnett*, 535 U.S. 391, 401–02, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002). Carroll fails to show that the Navy failed to offer a reasonable accommodation, so the Navy need not show the accommodation to have been an undue burden.

10. Despite quoting the passage in full in her brief, Carroll erroneously claims that this passage supports her allegation that McCafferty required her to send him an email "on those dates that Plaintiff reported after 6:30 a.m." Pl.'s Opp'n at 5.

Opp'n at 6 (citing Pl.'s Ex. 8), and that the requirement had a " 'chilling effect' on her ability to take required leave occasioned by medical necessity." *Id.* at 5 n. 2 (citing no record evidence). Neither the alleged technical violation of NAVSEA policy nor the alleged chilling effect constitutes an adverse employment action, for while she would have preferred to not to have to check-in whenever she was early or late, her discomfort at having to do so does not constitute "objectively tangible harm." *Brown,* 199 F.3d at 457; *see also id.* ("Mere idiosyncracies of personal preference are not sufficient to state an injury.").

Second, while the Navy never justifies its seven-week delay in answering Carroll's request for a flexible work schedule,[11] the delay does not constitute an adverse employment action because Carroll fails to identify "objectively tangible harm" resulting from the delay. *Brown,* 199 F.3d at 456–57. Undisputed record evidence indicates that the Navy reasonably accommodated Carroll during the seven week delay. First, her supervisor allowed employees a flexible arrival time anyway—one hour before or after the fixed arrival time, provided that they work an eight-hour day. *See* Tr. at 26 (Test. of Richard Bowers). Second, Carroll used "credit hours" to take time off.[12] Carroll Dep. at 76 ("I have used credit hours all along."). While other employees were allowed only one credit hour per day, Carroll's supervisor let her to earn to two to three credit hours per day, *id.* at 75, without objecting to the credit hours Carroll proposed. *Id.* at 74. This amounted to eight to ten hours a week, roughly a day off per week. *Id.* at 75. Third, when her credit hours were used up, Carroll used paid annual leave. *Id.* at 76. Finally, during the seven-week period, Carroll suffered no adverse consequences for arriving late to work:

Q: From June 15th until August 7th, [2000,] were you afforded any type of flexibility, as far as your schedule was concerned?

A: No, I mean, if I were coming late I was just asked can I make it—but I can't remember in that time frame if that happened or not.

*Id.* at 73. Carroll essentially concedes that she suffered no adverse employment action. As a result, the court will grant Navy's summary judgment motion on Count II.

*3. Denial of Monetary Awards (Count V)*

■ Carroll argues that while she received incentive awards during the year 2000, she was denied a year-end bonus given to employees outside her protected class. The Navy argues that Carroll provides no evidence that she was denied a bonus and, thus, that she did not suffer an adverse employment action. Def.'s Mot. for Summ. J. at 24.[13] The Navy's position

11. Even taking into account McCafferty's week of leave starting June 16, 2000, Tr. at 81, McCafferty never explains why he needed six more weeks, until August 7, 2000, to send a form letter that did no more than grant interim relief and ask for more documents.

12. NAVSEA employees may earn "credit hours" by working extra hours on normal days. These credit hours can be applied to allow an employee to take a paid leave day without having to use annual leave. *See* Def.'s Ex. A at 73–76 (Carroll Dep.).

13. The Navy also argued, wrongly, that as a matter of law, the denial of a performance award does not constitute an adverse employment action. Def.'s Mot. for Summ. J. at 24. The D.C. Circuit clearly held otherwise—even denial of a discretionary bonus may be an adverse employment action. *See Russell v. Principi,* 257 F.3d 815, 819 (D.C.Cir.2001) ("[W]e reject the notion that a denial of a monetary bonus is not a cognizable employment action ...").

is well taken. Carroll fails to identify any evidence that she was denied a bonus others received. *See id.* (citing *Conley v. Village of Bedford Park*, 215 F.3d 703, 711–12 (7th Cir.2000), for the proposition that mere allegations cannot establish prima facie discrimination). Navy statistics indicate that Carroll receive two awards, more than most of her colleagues. Flynn Aff. at 1 (noting that only seven; or 22%, of Carroll's co-workers received two or more awards during fiscal year 2000). Furthermore, Bonita Flynn, the director in charge of approving of awards for those in Carroll's division, indicates that in fiscal year 2000, employees received only incentive awards and that "[n]o performance awards were given." *Id.* at 1. Carroll claims that, despite its official policy, NAVSEA gave year-end performance awards in 2000 to employees outside of her protected classes (non-disabled males) who had also received incentive awards during the year. *See* Pl.'s Opp'n at 7, 27–28. However, the only evidence Carroll cites to support this allegation is her own EEO complaint. *See id.* at 7, 28 (citing Pl.'s Ex. 11) (Carroll Second EEO Compl.). A previous administrative complaint does not suffice to raise a genuine issue of material fact. *See* Fed. R. Civ. P. 56(e) ("[A]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial ...").[14] Because Carroll cannot show she was denied an award, the court grants the Navy's summary judgment motion on Count V.

14. Carroll also suggests, without support, that NAVSEA's award statistics are flawed. "Defendant can be considered less than forthcoming with its information, since the award history for 09B5 for FY 2000 is subject to change

## III. CONCLUSION

For the reasons, set forth above, the court dismisses Counts III and IV for lack of jurisdiction and grants the Navy's summary judgment motion on Counts I, II, V and VI. An appropriate order accompanies this memorandum opinion.

depending upon the particular plaintiff." Pl.'s Opp'n at 27 (citing Pl.'s Ex. 26 & 27). Carroll failed to submit Exhibits 26 and 27. Carroll also failed to "supplement the record with at least two other exhibits." *Id.*