In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 07-1284

BARRY K. DUNCAN,

*Plaintiff-Appellant,*

*v.*

FLEETWOOD MOTOR HOMES
OF INDIANA, INCORPORATED,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 6 C 42—**Roger B. Cosbey**, *Magistrate Judge.*

_____

ARGUED JANUARY 29, 2008—DECIDED FEBRUARY 29, 2008

_____

Before BAUER, KANNE, and ROVNER, *Circuit Judges.*

PER CURIAM.  Barry Duncan worked at Fleetwood Motor Homes of Indiana for 20 years, 15 of them as a material handler. In 2004, when Duncan was 51, Fleetwood told him he could no longer work as a material handler. The company offered Duncan several less desirable jobs in the following months, and eventually he accepted a position as an assembler. Duncan sued, claiming that Fleetwood violated the Age Discrimination in Employment Act by forcing him to give up his job as a material handler. A magistrate judge, presiding by consent, granted

summary judgment for Fleetwood. Because we conclude that questions of fact remain concerning the legitimacy of Fleetwood's explanation for its action, we vacate the judgment and remand for further proceedings.

## I.

Except as otherwise noted, the following facts are undisputed. Fleetwood hired Duncan in 1987 to work as one of about 40 material handlers at its manufacturing facility in Decatur, Indiana. He was briefly laid off in 1990 and afterward held a variety of positions until he regained his permanent job as a material handler in 1993. Duncan continued to work as a material handler until his position was given to a younger man in September 2004.

What motivated that action is the issue here. In December 2003, Duncan had injured his back at work while moving a box weighing between 60 and 70 pounds. His doctor imposed temporary work restrictions, though he still returned to his job the next day. Initially he was limited to less than 25 pounds of constant lifting, pushing, and pulling, but this limit was raised to 30 pounds in January and 40 pounds in April. These restrictions did not prevent Duncan from performing the essential functions of a material handler, and during his recovery he never asked management for any formal accommodation. On occasion, a task required that Duncan lift something in excess of the temporary restrictions. For example, about once each week, he encountered a 60-to-70-pound box like the one he was moving when he injured himself. As instructed by Fleetwood, Duncan sought assistance from a co-worker in these limited circumstances and completed the tasks. Duncan received medical treatment for

his back injury over the next seven months, but he did not miss any work days as a result of his injury. On July 13, 2004, Duncan's doctor released him from all work restrictions. From then on he required no special assistance in moving heavy objects.

A few weeks later, Duncan noticed other employees wearing armbands designed to reduce elbow strain. Duncan had been experiencing elbow pain for a few days, so he stopped at Fleetwood's safety station and asked for a pair. While Duncan was there, the first-aid attendant inquired about his back, and Duncan replied that he still felt some minor pain in his leg and hip. This answer prompted the attendant to remind Duncan that his claim for worker's compensation was already closed. Duncan explained that he was not asking to see a doctor, but simply following his doctor's advice to keep the company apprised of his condition. Shortly thereafter, Fleetwood told Duncan that he must undergo a functional capacity evaluation ("FCE") to gauge his fitness to perform the duties of a material handler.

The physical therapist who conducted the FCE on August 12, 2004, used a job description printed on letterhead from WorkSTEPS, an outside consultant. This job description for material handlers is dated April 4, 2004, and was created after Duncan injured his back in 2003. Fleetwood submitted no evidence at summary judgment about the sources of information used in creating the job description, nor did Fleetwood even produce evidence that WorkSTEPS actually had a role in creating it. Fleetwood simply attached the document to an affidavit from its personnel manager, who said the job description was "in place" but gave no hint how it got there. The document bears a signature line for a Fleetwood

employee to acknowledge the accuracy of the listed physical requirements, but the line is blank. A signature line for a WorkSTEPS representative also is blank. The job description requires, among other things, that a material handler be able to lift 97 pounds occasionally and 73 pounds frequently. Duncan testified that these lifting parameters are inaccurate; he said, and Fleetwood did not dispute, that material handlers do not lift items that heavy without a machine or help from a co-worker. The physical therapist also voiced skepticism about the job description. She noted that Duncan was unfamiliar with some of the listed duties, and commented that his return to work after his injury without any incident or missed days raised a concern about the credibility of the job description. Fleetwood offered no evidence that it had used this job description to conduct an FCE for any other currently employed material handler, or any applicant for that position. Nonetheless, the physical therapist performed the FCE using the job description she was given and concluded that Duncan was not able to lift 97 pounds occasionally or 73 pounds frequently.

That conclusion prompted Duncan's doctor to impose permanent restrictions on August 19, 2004. Among other limitations, Duncan was barred from ever lifting 97 pounds and directed not to lift 73 pounds frequently. Fleetwood's safety manager then told Duncan he probably could not continue working as a material handler. Duncan countered that none of the restrictions imposed by his doctor would impede his ability to perform the requirements of the job, and he insisted that his years working as a material handler demonstrated that the job description was inaccurate.

In response to Duncan's protests, Fleetwood hired an occupational therapist who, according to her written

report, visited the Decatur facility to assess the validity of the job description and compare it to Duncan's permanent restrictions. She wrote that a "tour of the facility and discussion and review of the many job duties required of a material handler" led her to conclude that the position in fact required the ability to lift 97 pounds occasionally and 73 pounds frequently. As with the job description itself, however, Fleetwood introduced the occupational therapist's report through its personnel manager, who verified that the document was in the company's files but once again said nothing about the events underlying its creation. Fleetwood did not introduce any testimony from the occupational therapist, or any evidence about who or what she consulted when she purportedly toured Fleetwood's facility to verify the accuracy of the unsigned job description.

On September 9, 2004, after receiving the occupational therapist's report, Duncan's supervisor, Adam Stucky, summoned Duncan and told him that Fleetwood was placing him on unpaid medical leave because the results of the FCE revealed that he could not perform the essential tasks of his job. Duncan maintains, however, that after the FCE was conducted on August 12, he continued to perform the essential tasks required of material handlers and had not been given a lighter workload or failed to perform a requested task. Nor after the FCE was he ever counseled about his performance. Duncan asked Stucky what tasks he supposedly could not perform, but got no answer. Duncan also asked Stucky why Fleetwood had made this decision; Stucky, a man of similar age, answered that Duncan must recognize that the two of them no longer could do many things.

When his job was taken from him, Duncan also was told that his unpaid medical leave would end and that his

employment would be terminated if Fleetwood could not find another position for him within 30 days. Duncan also was told that it was his responsibility to telephone Fleetwood every day to inquire about open positions. Duncan did so twice a day, even after 30 days had passed. In November 2004, Fleetwood offered Duncan a clerical position. Duncan declined because he lacked clerical experience and the job paid less than material handling. Indeed, the Fleetwood personnel employee who made the offer told Duncan the job probably would not interest him. Fleetwood next offered Duncan a paint-preparation job in December 2004, but Duncan declined again because he did not want to work the night shift. In late December 2004, Fleetwood offered to hire Duncan as an assembler. Duncan accepted this position and returned to work in early January 2005. Fleetwood does not dispute that assemblers have less opportunity to earn overtime pay than material handlers.

Duncan was replaced by a worker under age 40. He then filed a charge of discrimination with the Equal Employment Opportunity Commission in April 2005. After receiving a right-to-sue letter, he timely filed this lawsuit claiming discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213, and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34. The parties consented to entry of final judgment by a magistrate judge, who in January 2007 granted Fleetwood's motion for summary judgment.

## II.

On appeal, Duncan has elected to pursue only his claim of age discrimination. Our review is de novo. *Perez v. Illinois*, 488 F.3d 773, 776 (7th Cir. 2007). We will uphold

a grant of summary judgment only if, viewing "the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact that must be decided by a jury." *O'Neal v. City of Chi.*, 392 F.3d 909, 910 (7th Cir. 2004); *see* FED. R. CIV. P. 56(c).

Duncan proceeded under the indirect, burden-shifting method of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that method, he had the initial burden of establishing a prima facie case of discrimination by adducing evidence that (1) he is a member of a protected class, (2) his performance met Fleetwood's legitimate expectations, (3) he suffered an adverse employment action, and (4) Fleetwood sought someone to perform the same work after he left. *See Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 846 (7th Cir. 2007); *see also Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 559 (7th Cir. 2007). Fleetwood does not dispute the magistrate judge's conclusion that Duncan satisfied these elements. Accordingly, Duncan raised an inference of discrimination, and the burden shifted to Fleetwood to proffer a legitimate, nondiscriminatory reason for the employment decision. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000); *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 886 (7th Cir 2001). Coming forward with such a reason would have shifted the burden back to Duncan to prove that the proffered reason was a pretext for discrimination. *See Griffin v. Sisters of Saint Francis, Inc.*, 489 F.3d 838, 844 (7th Cir. 2007); *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006). As far as this record shows, however, the explanation Fleetwood gave for taking Duncan's job cannot be characterized as legitimate. Fleetwood thus failed to carry its burden under the *McDonnell-Douglas* framework and was not entitled to summary judgment.

To reach this conclusion we need not look beyond Fleetwood's own presentation. The company did not dispute that Duncan was meeting its legitimate performance expectations when it removed him from his job. Nevertheless, Fleetwood argued that Duncan's inability to meet the physical demands of the paper job description was a defensible reason for the action taken. These positions are impossible to reconcile. As we have noted many times, when an employer has cited performance issues as the justification for its adverse action, the performance element of the prima facie case cannot be separated from the question whether the employer proffered a nonpretextual explanation for its challenged conduct. *See, e.g.*, *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 687-88 (7th Cir. 2007); *Hague v. Thompson Distribution Co.*, 436 F.3d 816, 823 (7th Cir. 2006); *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir. 1997). An employee who cannot meet the physical demands in a job description cannot possibly be performing to the employer's legitimate expectations unless—as Duncan has said all along—the job description is not accurate and does not reflect the employer's true expectations. It follows that by effectively conceding that Duncan was meeting its legitimate performance expectations, Fleetwood also conceded that the 73- and 97-pound lifting requirements set out in the job description are not genuine demands of the job. By its own account, then, the reason Fleetwood gave for removing Duncan was false—i.e., not legitimate—so the company never discharged its burden to come forward with a *legitimate*, nondiscriminatory justification for the employment action. *See Patrick v. Ridge*, 394 F.3d 311, 318 (5th Cir. 2004) (explaining that employer has not met its burden of production if its putative reason for challenged employment

action is shown by its own evidence to be an impossibility); *Coco*, 128 F.3d at 1179 (explaining that "defendant's expectations are not legitimate if they are phony").

Moreover, even if Fleetwood's inconsistent litigation positions were not enough to illuminate that its proffered reason lacks legitimacy, we still would conclude that Duncan adduced sufficient evidence to call into question the honesty of Fleetwood's explanation for taking away his job. Even when an employer has proffered what appears to be a legitimate, nondiscriminatory explanation for its conduct, summary judgment will not be appropriate if the aggrieved employee produces evidence from which a jury reasonably could find that the stated explanation is false and that the real reason was discriminatory. *See Brown v. Ill. Dep't of Natural Res.*, 499 F.3d 675, 683 (7th Cir. 2007); *Perez*, 488 F.3d at 777. Duncan did that. His evidence shows that even during the seven months he was under restrictions, he never missed a day of work or evaded the normal duties of a material handler. Then after his doctor lifted all restrictions Duncan continued to perform exactly the same tasks as all other material handlers, without modification of his duties or any incident where he was unable to perform. He was not reprimanded, nor did he receive any complaints about his performance during the two months after his doctor gave him a clean bill of health.

We are mystified, then, that Fleetwood would say Duncan could not perform the job of material handler when he was doing exactly that on a daily basis without incident or criticism. We have explained that the honesty of an employer's statement is often revealed by analyzing its reasonableness; the more objectively reasonable the explanation, the more likely it honestly motivated the

challenged employment action. *See Gordon*, 246 F.3d at 889; *Flores v. Preffered Technical Group*, 182 F.3d 512, 516 (7th Cir. 1999). Here, Fleetwood's explanation for why it fired Duncan is, if anything, objectively *un*reasonable. We think it particularly significant that Fleetwood offered no evidence that it used this job description to conduct an FCE for any other currently employed material handler, or any applicant for that position. In fact, Fleetwood did not even assert that Duncan's replacement could meet the lifting requirements in the job description.

Still, Fleetwood protests that it could not have been discriminating against Duncan because its efforts to find him a new position evidence that it wanted him to remain employed with the company. But this contention is inconsistent with Fleetwood's concession that Duncan suffered an adverse employment action. The relevant inquiry is not whether Fleetwood wanted Duncan to leave the company because of his age, but whether it removed him from his job as a material handler on that basis. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (explaining that firing, reassignment with significantly different responsibilities, and significant change in benefits all can constitute adverse employment action); *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 456 (7th Cir. 1994) (explaining that "employment actions that fall short of outright termination may also be actionable under the ADEA"). Leaving aside for the moment the fact that Fleetwood put Duncan out of work entirely for several months, transferring older workers to objectively less-desirable jobs on the basis of their age is still age discrimination. *See Kodl v. Bd. of Educ. Sch. Dist. 45*, 490 F.3d 558, 562 (7th Cir. 2007) (assuming that transfer could constitute discrimination under ADEA); *Radue v. Kimberly-Clark Corp.*,

219 F.3d 612, 615 (7th Cir. 2000) (explaining that employer may not use age to decide which employees whose jobs have been eliminated in RIF will be transferred to other available positions); *see also Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 702 (7th Cir. 2001) (suggesting that lateral transfer with loss of benefits may constitute adverse employment action under Title VII).

Fleetwood also tries to suggest that WorkSTEPS bears responsibility for the decision to remove Duncan from his job. According to Fleetwood, the essential job functions for the position of material handler "were set forth in a job description created by an independent entity, WorkSTEPS" and thus the company should be insulated from any allegation of discriminatory motive. This contention is nonsensical, most importantly because there is absolutely nothing in the record to suggest that Fleetwood did not play a dominant role in creating the job description. Indeed, Fleetwood's representation that WorkSTEPS created the job description is not supported by any evidence at all, apart from the appearance of the WorkSTEPS name on the document. There is no evidence that the WorkSTEPS consultant ever visited the Fleetwood facility, performed any evaluation, made any observations, or interviewed anyone. The only evidence about the job description is the document itself, which Fleetwood's personnel manager knew nothing about, other than that it was the job description on file. And despite signature lines for WorkSTEPS and Fleetwood representatives, the document is not signed or dated by anyone. Similarly, Fleetwood introduced no testimony from the occupational therapist hired to verify the WorkSTEPS job description. A defendant's legitimate, nondiscriminatory reason must be "clearly set forth, through the introduction of admissible evidence." *St.*

*Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993); *Tx. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981); *Hasham v. Cal. State Bd. of Equalization*, 200 F.3d 1035, 1044 (7th Cir. 2000). Fleetwood did not introduce any admissible evidence about what the material handler job required, so Duncan's uncontradicted testimony about the job requirements would be enough for a jury to conclude that Fleetwood's explanation was phony.

Finally, even if the burden had shifted to Duncan, we also would conclude that he adduced sufficient evidence to raise an inference that Fleetwood's real reason for removing him was discriminatory. Evidence of pretext combined with the prima facie case alone may be enough in some circumstances. *Reeves*, 530 U.S. at 148. Here we have both, but there is more. Duncan was 51 years old at the time he was fired, and he asserts, based on personal knowledge, that Fleetwood replaced him with a worker under 40 years old. The Supreme Court has said, in the age-discrimination context, that replacement of the plaintiff by someone substantially younger is a "reliable indicator of age discrimination." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). We have defined "substantially younger" as generally 10 years younger. *Balderston*, 328 F.3d at 321-22. Duncan's replacement was more than 10 years younger, and thus suggestive of age discrimination. At his deposition Duncan also testified that before he was removed from his job he overheard a production manager comment that older workers cost the company a lot of money (Fleetwood itself introduced this testimony at summary judgment). Additionally, as Stucky was escorting Duncan out of the plant, Stucky made a comment that could be construed as indicating that Duncan was removed because of his age. Perhaps Stucky's words could be

construed differently, but finding meaning in ambiguous statements is the province of the jury. *Phelan v. Cook County*, 463 F.3d 773, 782 (7th Cir. 2006).

### III.

For the foregoing reasons, we VACATE the judgment of the magistrate judge and REMAND the case for further proceedings.