[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-11340
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 8, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-02040-CV-JEC-1

KAREN W. TOWNSEND,

Plaintiff-Appellant,

versus

DELTA FAMILY-CARE DISABILITY AND SURVIVORSHIP
PLAN,
DELTA AIRLINES FAMILY CARE DISABILITY AND
SURVIVORSHIP TRUST,
THE ADMINISTRATIVE COMMITTEE OF DELTA AIR LINES,
INC.,
JOHN DOES, 1-V DELTA WELFARE BENEFIT PLANS,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(October 8, 2008)**

Before MARCUS, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Karen W. Townsend filed this action to recover long-term disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA") from Delta Family-Care Disability and Survivorship Plan ("the Plan"), Delta Airlines, the trust funding the Plan, and the Administrative Committee of Delta Airlines (collectively "Delta"). On cross-motions for summary judgment, the district court granted summary judgment to defendants, holding that the Plan did not abuse its discretion in denying long-term disability benefits to Townsend. For the reasons stated below, we affirm the district court's ruling.

## BACKGROUND

The Plan is an employee welfare benefit plan as defined under ERISA, 29 U.S.C. § 1002(1). It provides short-term and long-term disability benefits to non-pilot Delta employees. The Plan states that an employee "shall be eligible for Long Term Disability provided he is disabled . . . as a result of demonstrable injury or disease (including mental or nervous disorders) which will continuously and totally prevent him from engaging in any occupation whatsoever for compensation or profit, including part-time work."

The Plan states that eligibility for benefits "shall be determined by the Administrative Committee or its designees in their sole discretion." The Plan involves levels of review: first, Aetna reviews claims and makes the initial decision as to eligibility; second, if a claimant disputes that eligibility determination, he or she may appeal that decision. The final eligibility decision is made by an Administrative Committee for Delta (the "Committee").

The Plan is funded through non-reversionary, periodic payments made by Delta into a benefits trust. The Committee reviewing claims has no connection to the payment of funds into the trust.

Townsend was working for Delta Airlines as a flight attendant when she became injured and developed osteoarthritis in both knees. She applied for and began receiving short-term disability benefits under the Plan. When the period of eligibility for short-term disability benefits expired, Townsend applied for long-term disability benefits.

Townsend's treating physician, Dr. Spruell, wrote a letter describing Townsend's condition:

> 1. As of August 29, 2000, because of the seriousness of her knee problems, she is totally and continuously disabled from any occupation. I will qualify that by saying that she can perform no job which requires more than one to two hours of standing, sitting, if she

3

has to get up and down, or walking. I would think that for this individual that would mean any reasonable job.

2. The functional limitations are that the patient cannot do long periods of standing. She must not be required to get up and down from a sitting position, climb stairs, or any job, which requires significant walking.

Dr. Bonner, Aetna's Medical Director, contacted Dr. Spruell by telephone to obtain clarification. Dr. Bonner recorded in Townsend's case file that Dr. Spruell had stated that Townsend could reasonably perform work where she could sit or stand for comfort and change positions as needed. Dr. Bonner concluded that Townsend was capable of performing at least part-time work and denied her claim for long-term disability benefits.

Townsend appealed the denial, submitting medical records from Dr. Spruell and pain and fatigue questionnaires. In the fatigue questionnaire, Dr. Spruell reported that Townsend needed to elevate her legs on a daily basis and was not "physically capable of performing a full eight-hour work day (including sedentary occupations)." On the pain questionnaire, Dr. Spruell responded "yes" to the question "[i]s it medically reasonable for your patient to need to lie down for a minimum of two (2) hours during the daytime?" Townsend's attorney also submitted a letter in which he expressed his belief that Townsend's "condition is such that she could not perform her usual duties due to the continuation of

4

problems with her knee." In response to a request for additional medical records, Townsend submitted office notes from Dr. Spruell and Dr. Vanderlyt, an orthopaedic physician. Townsend also submitted a letter from Dr. Spruell to her lawyer discussing Townsend's knee pain and stating that Townsend "has significant disability because of her job and cannot stand for lengthy period of time. As a matter of fact, she probably cannot stand to walk more than an hour or so in any given work day." From this information, Dr. Bonner concluded that although Townsend might not be able to work as a flight attendant or in another position requiring a great deal of standing and walking, she might be able to perform part-time sedentary work. Dr. Bonner ordered an independent functional capacity evaluation ("FCE") to further assess Townsend's physical capabilities. The FCE was performed by a physical therapist. The therapist noted in the FCE report that Townsend exhibited some "inconsistent behaviors" including, among other things, that "gait deviations did not increase with the FCE or with the frequent circuit despite walking and standing for one hour with reports of increased pain; with second day testing, she reported being unable to walk or stand for longer than 4 minutes at a time due to 10/10 pain but she completed a frequent circuit with these activities [lasting more than 4 minutes each] for one hour." Due to the inconsistencies, the therapist felt that the capabilities demonstrated in the

FCE testing represented her "minimal capabilities." The therapist recommended that work accommodations be made to allow Townsend to change positions from sitting, standing, and walking, and concluded that she "would be capable of light duty work on an 8 hour day basis."

Based on the result of the FCE and the medical evidence from Dr. Spruell, Dr. Bonner determined that Townsend was not "totally disabled from any occupation, including part time" and denied her appeal. In Dr. Bonner's letter to Townsend's attorney discussing the denial, Dr. Bonner referred frequently to the telephone conversation he had held with Dr. Spruell, related the specific statement by Dr. Spruell that Townsend "could reasonably perform work where she could sit or stand for comfort and change positions as needed," and noted that this conversation formed a significant part of the basis for the determination that Townsend was not totally disabled.

Townsend appealed to the Committee. Townsend, however, did not address the telephone call or indicate that she or Dr. Spruell felt the conversation had been misinterpreted or incorrectly memorialized.

On January 22, 2002, the Committee issued a letter informing Townsend's attorney that it had decided to affirm the denial of benefits. The Committee relied on the statements made by Dr. Spruell to Dr. Bonner that Townsend could

6

reasonably perform work if she could sit or stand for comfort and change positions as needed. The Committee acknowledged that this statement contradicted other statements submitted by Dr. Spruell, but resolved this conflict by noting that none of Dr. Spruell's other comments expressly stated that he felt she was disabled from any jobs, including part-time jobs. The Committee also relied on the FCE report which supported the finding that Townsend could work in a sedentary job.

After this final denial, Townsend continued to submit documentation to the Committee. On February 25, 2002, Dr. Spruell wrote a letter to Delta stating

> It is evident at this point, and has been true in the past, that she cannot undertake gainful employment because she cannot stand for any length of time and cannot do a job that requires her to get up and down out of a chair. As a matter of fact, sitting causes her difficulty and she even has some difficulty driving to work. For these reasons she is totally and permanently disabled and unable to undertake any gainful employment.

The same day, Townsend was found eligible for Social Security Disability benefits. Townsend sent the Committee a copy of the Social Security decision.

Townsend then filed suit claiming the Committee had improperly denied her claim for disability benefits under ERISA. Both parties filed motions for summary judgment. Delta submitted the administrative record that was before it during its determination of Townsend's eligibility. Townsend submitted Dr. Spruell's February 25, 2002 letter, the Social Security decision, and an affidavit from Dr.

7

Spruell. In response to a motion by Delta, the district court excluded these items from consideration because they were outside the administrative record. Based on the original record, the district court granted summary judgment for Delta. Townsend timely appealed.

## STANDARD OF REVIEW

This court reviews de novo a grant of summary judgment, applying the same standards as the district court. Williams v. BellSouth Telecomm., Inc., 373 F.3d 1132, 1134 (11th Cir. 2004). Additionally, we review evidentiary rulings for an abuse of discretion. U.S. v. Padron, 527 F.3d 1156, 1159 (11th Cir. 2008).

## DISCUSSION

Where, as here, the Plan endows the plan administrator with discretion to determine eligibility for plan benefits, we review the administrator's decision under a deferential standard. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989). This court will reverse the plan administrator's decision only if it was arbitrary and capricious. Paramore v. Delta Airlines, 129 F.3d 1446, 1449 (11th Cir. 1997). If, however, the plan administrator also operates under a conflict of interest we apply heightened arbitrary and capricious review.[1] Id. A conflict of

---

[1] Townsend argues that Metropolitan Life Ins. Co. v. Glenn, – U.S. –, 128 S.Ct. 2343 (2008) has affected our review under ERISA. Townsend contends that more searching review than arbitrary and capricious is now required because the Supreme Court used "trust principles"

8

interest exists where the plan administrator determines eligibility for benefits and also pays those benefits out of its own assets.  Levinson v. Reliance Standard Life Ins. Co., 245 F.3d 1321, 1326 (11th Cir. 2001).

In her brief, Townsend suggests that the Committee operated under a conflict of interest because it funded the benefits trust.  The payments into the benefits trust, however, were periodic and non-reversionary.  The Committee incurs no direct expense as a result of granting benefits nor does it profit from the denial or discontinuation of benefits, and therefore does not operate under a conflict of interest.  Buckley v. Metro. Life, 115 F.3d 936, 939 (11th Cir. 1997); see also Turner v. Delta Family-Care Disability and Survivorship Plan, 291 F.3d 1270, 1273 (11th Cir. 2002) (applying ordinary arbitrary and capricious review to the same benefits plan involved in this case).  The appropriate standard of review is, therefore, the arbitrary and capricious standard of review, and we will overturn the Committee's decision to deny Townsend long-term disability benefits only if it

---

in Glenn.  We disagree.  The Supreme Court used the same trust principles in Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101 (1989) upon which our standards are based.  See Marecek v. BellSouth Telecommunications, Inc., 49 F.3d 702, 705 (11th Cir. 1995).  Nothing in Glenn's discussion of trust principles has, therefore, altered this court's standards for reviewing an ERISA plan administrator's decisions.  Furthermore, Glenn addressed only cases where a conflict of interest exists.  128 S.Ct. at 2350; see also White v. Coca-Cola, Co., No. 07-13938, --- F.3d --- (11th Cir. Sept. 10, 2008) (concluding that Glenn has not affected ERISA cases where the plan administrator did not operate under a conflict of interest).  As there is no conflict of interest here, Glenn has not affected our analysis.

9

abused its discretion. See Jett v. Blue Cross and Blue Shield of Alabama, Inc., 890 F.2d 1137, 1139 (11th Cir. 1989) (noting that in ERISA cases "arbitrary and capricious" and "abuse of discretion" are used interchangeably).

We next turn to the question of what records the court may consider in reviewing the Committee's determination. Our case law is settled that we are limited to only those documents that were before the administrator. See Jett, 890 F.3d at 1139 (noting that a review of the administrator's determination is "based upon the facts as known to the administrator at the time the decision was made"); Turner, 291 F.3d at 1273 (stating that the court's review is "based on the evidence of the record"). Thus, the district court properly sustained Delta's objection to Townsend's submission of documents outside the administrative record. We will, therefore, not consider Dr. Spruell's February 25, 2002 letter, his affidavit, or the decision granting Townsend Social Security Disability benefits.

We now address the question of whether the Committee acted in an arbitrary and capricious manner by denying Townsend long-term disability benefits. "Under the arbitrary and capricious standard of review, the court seeks 'to determine whether there was a reasonable basis for the [administrator's] decision, based upon the facts as known to the administrator at the time the decision was made.'" Hunt v. Hawthorne Associates, Inc., 119 F.3d 888, 912 (11th Cir. 1997)

(quoting Jett, 890 F.2d at 1139)).  So long as it was supported by evidence in the administrative record, the Committee's decision to deny Townsend disability benefits was not improper; it is irrelevant whether this court or anyone else might have reached a different conclusion.  Turner, 291 F.3d at 1274.

Townsend is not entitled to long-term disability benefits under the Plan if she is capable of "engaging in any occupation whatsoever for compensation or profit, including part- time work."  Although neither "any occupation" nor "part-time" are defined by the Plan, a plan cannot define eligibility for benefits so narrowly that it "would deny benefits [if the claimant] should engage in some minimal occupation, such as selling peanuts or pencils, which would yield only a pittance."  Helms v. Monsanto Co., Inc., 728 F.2d 1416, 1421 (11th Cir. 1984).  Under the Federal Department of Labor's definitions of types of work, the level of work carrying the fewest physical requirements is "sedentary work."  Sedentary work involves "sitting most of the time, but may involve walking or standing for brief periods of time.  Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met."  Dept. of Labor, Dictionary of Occupational Titles.  Thus, our question is whether the record supports the conclusion that Townsend is capable of performing sedentary work—the least physically demanding category of work—on at least a part-time basis.

11

We hold that the evidence in the administrative record supports the Committee's determination that Townsend was capable of performing at the very least part-time sedentary work. In a telephone conversation with Dr. Bonner, Dr. Spruell stated that he believed she could reasonably perform work where she could sit or stand for comfort and change positions as needed. This is consistent with sedentary work. Additionally, the FCE indicated that Townsend was capable of light-duty work. To the extent other evidence in the record suggests that a claimant is disabled, a plan administrator is entitled to weigh the evidence and resolve conflicting evidence about the claimant's disability. See Paramore, 129 F.3d at 1452 (discussing the administrator's right to reach a conclusion in the face of medical evaluations containing "sporadic, internally inconsistent statements").

Townsend argues that the Committee abused its discretion by relying on Dr. Bonner's report of his conversation with Dr. Spruell. Townsend contends that this conversation was unreliable as evidence because this conversation was inconsistent with the other documentation submitted by Dr. Spruell, and the Committee should have obtained clarification of an unverified, oral statement. We disagree. Dr. Spruell's statement over the phone was not so totally inconsistent with his other records that it was improbable he would have made it. In a letter, Dr. Spruell wrote that Townsend "can perform no job which requires more than

12

one to two hours of standing, sitting, *if she has to get up and down*, or walking."

(emphasis added). This finding is not inconsistent with a statement that she could

perform a job where she could be seated and change positions as needed for

comfort. Other records submitted by Dr. Spruell discussed Townsend's inability

to stand and inability to work a full, 8-hour day. Dr. Spruell did not directly

address Townsend's ability to work while seated on a part-time basis. The

Committee's failure to obtain clarification or confirmation of the call was not an

abuse of discretion. Under ERISA, the claimant bears the burden to prove that she

is entitled to benefits. Horton v. Reliance Standard Life Ins. Co., 141 F.3d 1038,

1040 (11th Cir. 1998). Any shortcomings in the record fell to her to correct. The

written denial of her benefits claim alerted Townsend to Dr. Bonner's

interpretation of his phone call with Dr. Spruell, and she had an opportunity to

correct any error in the record before the final review of her claim, if, indeed, she

felt there was an error. Thus the Committee was entitled to rely on the information

in her record.

Townsend also contends that the FCE was faulty and the Committee should

not have relied upon it to deny her benefits. She argues that (1) the objective

findings in the FCE indicate that she could not stand or walk for more than one

hour, (2) the FCE was internally inconsistent because the objective findings

indicated that she could not stand or walk for long periods of time and yet the FCE concluded that she could perform light-duty work for 8 hours a day, and (3) an FCE from a physical therapist should not have been given greater consideration than the statements of Townsend's treating physician. These arguments fail. First, the fact that she cannot stand or walk for more than one hour does not prove that Townsend is unable to perform part-time sedentary work and so does not establish that she is disabled under the Plan. Second, FCEs are routinely conducted by physical therapists. See Duncan v. Fleetwood Motor Homes of Indiana, Inc., 518 F.3d 486, 489 (7th 2008); Baker v. Barnhart, 457 F.3d 882, 886 (8th Cir. 2006). And plan administrators routinely rely on FCEs. See Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 213 (1st Cir. 2004) (concluding that it was reasonable for a plan administrator to rely upon an FCE as evidence supporting a determination that claimant did not meet plan's definition of disability); Jackson v. Metro. Life Ins. Co., 303 F.3d 884, 888 (8th Cir. 2002) (noting that an FCE's determination that claimant could do light work was enough to constitute substantial evidence for denial of benefits). Third, plan administrators are not required to give greater weight to the submissions of a treating physician than to other reliable evidence. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003). Furthermore,

as discussed above, the record contained Dr. Spruell's unrefuted statement that he believed she could perform sedentary work.

Finally, Townsend argues that the Committee abused its discretion by not obtaining a vocational assessment that would apparently determine what jobs Townsend would be able to perform. The burden to prove her disability lay with Townsend, Horton, 141 F.3d at 1040, and so the Committee was under no obligation to conduct a vocational assessment.

In light of the evidence in the administrative record indicating that Townsend was able to perform sedentary, part-time work, it was not unreasonable for the Committee to conclude that Townsend was not disabled within the meaning of the Plan.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court.