In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 23-3418

KELLIE WILSON,

*Plaintiff-Appellant,*

*v.*

AIM SPECIALTY HEALTH,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cv-01929 — **Sara L. Ellis**, *Judge.*

———————————

ARGUED FEBRUARY 4, 2025 — DECIDED MAY 27, 2026

———————————

Before HAMILTON, JACKSON-AKIWUMI, and PRYOR, *Circuit Judges.*

JACKSON-AKIWUMI, *Circuit Judge.* In 2012, Kellie Wilson, a Black woman, started working full-time for AIM Specialty Health. Throughout her tenure, she received merit-based salary increases, but it took eight years for her to be promoted. Some of her non-Black colleagues received higher salaries from the start and were promoted more quickly. Witnessing this, Wilson sued AIM for disparate pay and failure to

promote under three statutes: Title VII, 42 U.S.C. § 1981, and the Illinois Human Rights Act (IHRA). AIM moved for summary judgment on all Wilson's claims, which the district court granted.

Reasonable jurors could find that Wilson's former supervisor disliked and, on at least one occasion, mistreated her. Reasonable jurors could also question, as faulty or mistaken, the reasoning behind AIM's pay and promotion decisions. But neither finding would be enough under our employment discrimination caselaw to merit a trial. For Wilson's case to proceed to trial, there must be evidence from which a jury could infer that AIM's justifications for its pay and promotion decisions were falsehoods designed to hide racial discrimination—in other words, pretext. This is where Wilson's evidence falls short, so we are compelled to affirm.

**I**

We review the district court's grant of summary judgment de novo, granting Wilson a favorable assessment of the record and all reasonable inferences. *Johnson v. Accenture LLP*, 142 F.4th 536, 542 (7th Cir. 2025).

AIM is a medical benefits management company. The company's IT department houses several business analyst positions under the Business Support umbrella. These positions, in order of increasing salary range, are BA, BAII, BAIII, and Business Consultant. The chart below outlines the experience required for each position.

| Position | Experience |
|----------|------------|
| BA | Entry-level role, no prior business analyst experience |
| BAII | Mid-level role, 3 to 5 years of baseline-type experience and some technical understanding |
| BAIII | 5 to 7 years of experience and deep technical understanding |
| Business Consultant | BA who also functions as team lead |

AIM's parent company, Anthem, Inc., sets a salary range for each position. For each role, AIM uses market research and third-party consultants to set the starting compensation within the salary range based on data available for similar positions. All BAs and Business Consultants at AIM receive a salary that falls within the assigned range. Managers therefore cannot propose a salary outside of Anthem's range. They may, however, propose starting a candidate at a higher salary within the range depending on the position being offered, the candidate's experience, and the salary the candidate requests.

AIM does not generally post promotion opportunities or internal openings on its website. When it does, employees do not receive automatic notification of the new postings. More commonly, it is up to employees to either look for job postings or speak with their supervisors to seek promotion opportunities. In some instances, a supervisor may seek to promote an employee without the employee first expressing an interest. The supervisor's recommendation is then subject to review and approval by higher-level management and Anthem.

In June 2011, Kellie Wilson began working as a BA contractor for AIM at an annual salary of $60,000. She had about three years of experience at that point. Approximately one year later, in August 2012, AIM hired Wilson as a full-time BAII employee, increasing her annual salary to $66,000.

Early in her tenure as a BAII, Wilson discussed career progression with her then supervisor, Lori Hess. But by 2014, Wilson began reporting to a different supervisor, Stefani Opasinski, a white woman. At this point, Wilson believed she should have been promoted to BAIII. When she did not receive a promotion in 2014 (now with approximately four years of BA experience and two years of BAII experience), she talked to Opasinski about a role outside of the BA team, which she learned was already filled.

Throughout Wilson's BAII tenure, she received merit-based salary raises almost every year. The lone exception was 2018, in part because of Opasinski's performance review for that year. Wilson also received recognition while a BAII: in 2018, her colleagues nominated her for an award granted by the IT department's chief for embodying the department's values. Between 2016 and 2018, Wilson believed she should have received another promotion beyond the BAIII level to Business Consultant (now with more than eight years of BA and BAII combined experience).

In June 2019, Wilson filed a charge with the U.S. Equal Employment Opportunity Commission alleging race discrimination. The next month, she emailed AIM's CEO complaining about her 2018 performance review and explaining her belief that she was being racially discriminated against with respect to her title and compensation. AIM's CEO did not respond to Wilson's email.

In December 2019, Wilson began reporting to yet another supervisor, Joneasha Snow, a Black woman. Approximately one year later, in December 2020, Snow recommended Wilson for promotion to BAIII. Opasinki, by then in a new role, had to approve the promotion and did, as did Anthem after that. AIM then promoted Wilson to BAIII. By that time, she had gained eight years of experience at AIM as a BAII (in addition to her four years' BA experience before that).

Under Opasinski's supervision, other AIM employees who were not Black obtained BAIII promotions more quickly than Wilson. Seeing this, Wilson filed a federal complaint against AIM for disparate pay and failure to promote under Title VII, Section 1981, and the IHRA. AIM moved for summary judgment on all claims. The district court found that, based on the statute of limitations, Wilson's claims were limited to those arising on or after April 12, 2017. The court then granted summary judgment in AIM's favor.

As to disparate pay, the court found that Wilson had not succeeded in presenting non-Black comparators who received better treatment. In addition, the court concluded that even if she had presented such evidence, she could not establish that AIM's non-discriminatory reason for the pay differential was pretextual. The court held these same reasons proved fatal to her failure to promote claim. We agree with the court's latter conclusion that Wilson's claims fail because she has not provided evidence from which a reasonable jury could infer that the stated reasons for AIM's employment decisions were pretextual.

## II

Because the same standard applies for discrimination claims under Title VII, Section 1981, and the IHRA, our analysis proceeds under Title VII. *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017); *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016). Title VII prohibits employers' intentional discrimination based on race. 42 U.S.C. § 2000e-2(a)(1). In this circuit, Title VII plaintiffs may choose to present their evidence under either of two frameworks. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017).

Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), the plaintiff has "the initial burden to establish a prima facie case of discrimination, after which the burden shifts to the defendant to provide a legitimate justification, before finally shifting back to the plaintiff to establish that such justification was pretextual." *Dunlevy v. Langfelder*, 52 F.4th 349, 353 (7th Cir. 2022). Under *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 764–66 (7th Cir. 2016), we place all evidence in "a single pile" and evaluate it "as a whole" to determine whether the employer would have taken the same action had the plaintiff had a different race or ethnicity, "and everything else had remained the same."

In the district court, Wilson presented her claims using the *McDonnell Douglas* framework. On appeal, she says she also proceeded in the district court under *Ortiz* by citing the case twice in her response to AIM's motion for summary judgment.[1] Regardless, we are free to assess the evidence under

---

[1] The district court likewise identified that Wilson framed her claims under *McDonnell Douglas* and proceeded to analyze them only under that

either framework. *See David*, 846 F.3d at 224. We conclude that Wilson's claims do not fare well under either one.

## A. Disparate Pay

As foreshadowed above, even if we concluded that Wilson proffered sufficient comparators—and therefore that she has made a prima facie case of disparate pay—Wilson's claim falters at a step beyond the prima facie case.[2] Namely, she does not present evidence from which a reasonable jury can infer that AIM's reasons for the pay disparity were pretextual.

For Wilson's disparate pay claim to proceed to trial, she would need to produce evidence from which a jury reasonably could find that AIM's stated explanation for her salary was untrue and that the real reason was discriminatory.

---

framework. On appeal, Wilson did not contest this determination in her briefing. It was not until after oral argument that Wilson filed a Rule 28(j) letter asserting that she and the district court had both invoked *Ortiz*.

[2] As Wilson points out, we need not reach her comparator evidence for the additional reason that AIM cites her performance as the basis for its promotion and (by extension) salary decisions. *Vichio v. US Foods, Inc.*, 88 F.4th 687, 691 (7th Cir. 2023) ("We may skip the *McDonnell Douglas* prima facie analysis if the employer raises the employee's performance as the reason for the adverse employment decision."). Having skipped the prima facie analysis, we also do not reach AIM's arguments under *Box v. A & P Tea Co.*, 772 F.2d 1372 (7th Cir. 1985), that Wilson never applied for or sought a Business Consultant promotion and so could not prove she would have taken the job had AIM offered it to her. *See Box*, 772 F.2d at 1377 ("When an employer uses a promotion system in which employees do not apply for promotions but rather are sought out by managers, the application requirement of the prima facie case is loosened somewhat. In this situation, the plaintiff can establish the application element of a prima facie case by showing that, had she known of an assistant manager opening, she would have applied." (internal citations omitted)).

*Duncan v. Fleetwood Motor Homes of Ind., Inc.*, 518 F.3d 486, 491–92 (7th Cir. 2008) (citations omitted). Notably, the wisdom of an employer's decision is not a consideration under the pretext analysis, which looks only to the "veracity" of the decision. *Barnes v. Bd. of Trs. of Univ. of Ill.*, 946 F.3d 384, 390 (7th Cir. 2020). As such, it is not enough for Wilson to assert that AIM's decisions were based on "faulty reasoning or mistaken judgment." *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008). Rather, to demonstrate pretext, Wilson must show that AIM justified its actions with a "lie" or "phony reason." *Barnes*, 946 F.3d at 389–90 (citation omitted).

At the same time, our employment discrimination cases have long recognized that courts need not take at face value an employer's stated reasons if a jury could find them unworthy of belief. Circumstantial evidence of falsity—including the fact that a stated reason is just improbable or unreasonable—can support a reasonable inference of pretext. E.g., *Huff v. Buttigieg*, 42 F.4th 638, 648 (7th Cir. 2022) (reversing summary judgment: "A jury may infer pretext when an employer enforces a policy in an objectively unreasonable way."); *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011) (reversing summary judgment; "an employer who advances a fishy reason takes the risk that disbelief of the reason will support an inference that it is a pretext for discrimination"); accord, e.g., *Galvan v. Indiana*, 117 F.4th 935, 946 (7th Cir. 2024) ("[W]hen the basis for the termination is objectively unworthy of belief, a jury may infer pretext"); *Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 646 (7th Cir. 2013) (reversing summary judgment: "We do not second guess an employer's business decision, but neither do we 'abandon good reason and common sense in assessing an employer's actions.'"); *Stalter v. Wal-Mart Stores, Inc.*, 195 F.3d 285, 290 (7th

Cir. 1999) (reversing summary judgment; employer claimed it fired plaintiff for "theft" after he ate a few taco chips from apparently abandoned open bag in break room). In this case, there was nothing inherently "fishy" about AIM's stated reasons for its decisions, and Wilson has not offered other evidence that would support a reasonable inference of pretext.

AIM argues that its pay practices were objectively reasonable because it uses a neutral process to set employees' starting salaries, merit increases, and bonuses, which is then reviewed by several management and corporate executives at AIM and Anthem. Even when supervisors use their discretion to adjust, for example, merit increases, their managers must review these determinations.

As to setting new hire salaries specifically, AIM explains that it is HR, and not supervisors, who has the final say. Under this pay regime, AIM offered Wilson a starting salary of $66,000 for a full-time permanent BAII position. At that time, the salary range for a BAII in the same office was between $52,184 and $78,276. AIM's research also showed that the median market pay for the position was $65,230. As such, Wilson's annual starting salary exceeded the median pay and fell within the office's salary range.

Wilson does not dispute AIM's process for setting her pay. She also admits that from April 2017 to December 2020, she was making more money than some of the other BAIIs. Notwithstanding, she offers several pieces of evidence she argues show that the stated reasons for AIM's decisions about her pay were pretexts for race discrimination. But the evidence she presents, even considered "as a whole," would not permit

a reasonable jury to infer that AIM's pay decisions were pre-textual.[3] *Ortiz*, 834 F.3d at 765.

First, Wilson points us to Drisia Sankara Narayanan, an Indian woman, who, like Wilson, first worked as a BA con-tractor for AIM for several years before joining the company full-time. Narayanan became a full-time permanent BAII at a salary of $67,500. Wilson argues the fact that Narayanan's starting BAII salary of $67,500 was higher than Wilson's $60,000 salary as a BAI contractor is evidence of pretext. But, Narayanan's BAII starting salary as a full-time employee next to Wilson's salary as an independent BA contractor can hardly be a point of comparison.

Second, Wilson directs our attention to Kimberly Louis, a white woman who also worked as a contractor before joining AIM full-time. Louis had three and a half years of BA experi-ence before she became a BAIII contractor for AIM earning $77,000 per year. After about six months as a BAIII contractor, Louis became a full-time permanent BAII, a one level decrease which dropped her salary to $75,000. Later that same year, AIM promoted Louis from full-time BAII to BAIII. The fol-lowing year, AIM promoted Louis once more, this time to Business Consultant.

Wilson highlights Louis's "meteoric rise through the ranks" as evidence of pretext because Wilson provided evi-dence suggesting that Louis was a less than stellar employee at the time of some of her promotions. As Wilson sees it, it

---

[3] Wilson presents the same evidence of pretext for both her disparate pay and failure to promote claims. We take Wilson's argument, in present-ing her evidence this way, to be that AIM's promotion of other employees over her resulted in her disparate pay.

was unreasonable for AIM to keep promoting Louis even though she was one of Opasinski's bottom performers in June 2017, just a few months before her promotion to BAIII. Wilson also takes issue with what she describes as AIM's main rationale for promoting Louis: Louis had become a "point person," handling work outside of her regular responsibilities. According to Wilson, she also possessed these work qualities, as evidenced by the award she received in 2018.

Even with all inferences drawn in her favor, Wilson's reference to Louis falls short of showing that AIM fabricated the reasons for any pay disparity. Indeed, although Wilson challenges AIM's reasoning for promoting Louis (and therefore increasing Louis's salary), Wilson's arguments show, at most, "mistaken judgment" on AIM's part. *Barnes*, 946 F.3d at 389 (citation omitted). Wilson does not challenge the sincerity of AIM's belief at the time that Louis was better suited for the promotion and higher pay. *Id.* at 389–90. Yet that sincerity is the heart of the pretext inquiry. What's more, the record supports AIM's decision insofar as Wilson placed below Louis on Opasinski's June 2017 list of bottom performers. Wilson's comparison to Louis therefore does not show pretext.

Third, Wilson recalls a meeting in 2019, not long after she filed her EEOC charge (which Wilson alleges Opasinski knew about), where Opasinski raised her voice and became irate when Wilson questioned her negative performance evaluation. From this, a jury could reasonably infer that Opasinski mistreated Wilson. However, without more, we cannot treat this as evidence that AIM was lying about its reasons for paying Wilson less than some of her colleagues. Recall, AIM's pay and promotion decisions underwent several levels of management review; Opasinski was just one level of that process

when she was Wilson's supervisor.  Thus, that Opasinski mistreated Wilson in 2019 falls short of demonstrating that AIM lied about its reasons for not increasing Wilson's pay before 2018.

Fourth, Wilson cites an instance, sometime after Opasinski ranked Wilson as the poorest performer, when Opasinski directed Snow to test Wilson—and no other employee—on her knowledge of what she learned that week. Snow testified that this was racial discrimination on Opasinski's part—a position Wilson also takes on appeal.

A jury could reasonably infer that Opasinski was inventing additional requirements to assess Wilson's performance and, by doing so, holding her to a higher standard. But that inference could not support a finding of discrimination related to Wilson's pay. This is because the imposition of additional assessment requirements after the ranking does not call into question the validity of the ranking itself. In other words, Wilson cannot rely on this incident to show pretext because she does not challenge the veracity of Opasinski's ranking of her as the poorest performing analyst.

Where an employer relies on ranking employees to support its employment decisions, it is not our job to second-guess that ranking even if the "employer's reasoning is incorrect." *Brooks v. Avancez*, 39 F.4th 424, 436 (7th Cir. 2022). Our role is not one of a "super-personnel department[] … sit[ting] in judgment of management decisions." *Id.* Rather we assess only whether a reasonable jury could infer that the employer's decisions were based on lies to shroud discriminatory behavior. For this reason, Opasinski's required test of Wilson (and Wilson alone), after the ranking, does not render

AIM's proffered reasons for Wilson's pay as compared to that of other employees untrue.

Fifth, Wilson argues she very clearly languished for years under Opasinki's supervision, whereas other non-Black colleagues' pay and rank rose rapidly. And it was not until Wilson filed her EEOC charge and Snow became her supervisor, Wilson explains, that she finally received the recognition she deserved. A jury could reasonably infer that AIM reacted to Wilson's EEOC charge by removing Wilson from Opasinski's supervision. Likewise, a reasonable jury could conclude Opasinski was not a good supervisor for Wilson. But the timing of Wilson's long-in-coming recognition alone does not show that AIM lied about Wilson's performance being the reason Opasinski did not recommend her for higher pay.

In sum, Wilson's evidence is insufficient to create an issue of fact as to the central inquiry: whether AIM used its neutral processes to hide a discriminatory reason for her lower pay. *See Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 436 (7th Cir. 2005) ("The aggrieved employee may seek recourse in federal court for discrimination only for the forbidden reasons set forth in Title VII, not for common workplace disputes or poor, nonsensical, or even heavy-handed management techniques or decisions."). As such, even assessing her evidence "as a whole," a jury could not reasonably conclude that AIM's processes were phony in order to set Wilson's pay based on her race. *Ortiz*, 834 F.3d at 765. Her disparate pay claim cannot succeed.

## B. Failure to Promote

Wilson argues that AIM should have promoted her to BAIII sometime in 2014 or 2015, and then again to Business

Consultant between 2017 and 2018. Because the statute of limitations ended on April 12, 2017, her only viable claim relates to her expected promotion to Business Consultant. Still, her failure to promote claim suffers from the same weaknesses as her disparate pay claim: she does not present evidence for a jury to infer pretext.

To promote employees internally, AIM primarily relied on employees seeking the positions themselves. Employees would have to search for an online post or speak with their supervisor about promotion opportunities. In some instances, it was also possible for managers to promote an employee, without the employee initiating the conversation. Using these processes, AIM promoted three employees to Business Consultant positions in 2018. According to AIM, those employees, including Louis, were top performers overseeing a broad spectrum of complex projects and had experience supervising other associates. AIM argues that Wilson, unaware of her colleagues' duties during this time, cannot say whether her performance was better than her three colleagues who became Business Consultants more quickly.

Wilson offered the same evidence of pretext for both her disparate pay and failure to promote claims. So our analysis above of pretext as to Wilson's disparate pay claim, *see ante*, at 7–12, applies here too. Although there are several indications that Opasinski disliked Wilson, Wilson is unable to point to any evidence from which a jury could infer that AIM's justifications for promoting other employees, but not Wilson, to Business Consultant in 2018 were dishonest. *See Duncan*, 518 F.3d at 492. As such, Wilson's failure to promote claim also fails.

## III

We conclude by addressing Wilson's argument that the district court committed reversible error by applying the wrong causation standard in its summary judgment opinion. Here, Wilson refers to the court's assertion that: "A jury, therefore, could not conclude that Wilson did not receive a promotion *solely due to her race.*" *Wilson v. AIM Specialty Health*, No. 21 C 1929, 2023 WL 8372041, at *9 (N.D. Ill. Dec. 4, 2023) (emphasis added); *see also id.* at *8 ("Without any such evidence, a jury could not conclude that Wilson's *race alone*—rather than her qualifications—was the source of the compensation differences." (emphasis added)).

According to Wilson, the court erred in requiring that she show the employment action was "solely due to her race," as opposed to her race being a "but for" cause of the action. Wilson is correct that, under Section 1981, "a plaintiff must demonstrate that, but for the defendant's unlawful conduct, its alleged injury would not have occurred." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 331–32 (2020). Indeed, elsewhere in its opinion, the district court cited the correct "but for" standard. *Wilson*, 2023 WL 8372041, at *6 (quoting *Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 929 (7th Cir. 2020), for the proposition that "better treatment of people similarly situated but for the protected characteristic" can serve as circumstantial evidence of intentional discrimination). So, although the district court misstated the law, its misstatement does not merit reversal given the weaknesses in Wilson's claims already addressed.

**IV**

We recognize Wilson's frustration in witnessing non-Black colleagues rise more quickly through AIM's ranks, with higher pay. We do not pass judgment on the veracity of her claims that it took AIM much longer to recognize her efforts. However, based on the evidence Wilson presented, a reasonable jury could not find that AIM's reasons for setting her pay or failing to promote her were really meant to discriminate against her based on her race, so we must AFFIRM.